**UNITED STATES of America ex rel. Robert Bruce HUNTT, H-6123,**

v.

**Harry E. RUSSELL, Warden.**

**Misc. No. 3727.**

United States District Court
E. D. Pennsylvania.

May 23, 1968.

Stephen J. McEwen, Jr., Dist. Atty., Vram Nedurian, Jr., Asst. Dist. Atty., Media, Pa., for respondent.

## OPINION

JOSEPH S. LORD, III, District Judge.

This is a petition by a state prisoner for a writ of habeas corpus. The relator has exhausted his state remedies. Commonwealth v. Huntt (Delaware County, March 15, 1967), aff'd mem. 210 Pa. Super. 741, 231 A.2d 315 (1967).

The relator, Robert Bruce Huntt, was apprehended in Baltimore, Maryland, on the early morning of March 8, 1966, while riding in an automobile driven by one Robert Weaver. In the partially opened trunk of the automobile, which belonged to Huntt, was a safe taken the previous evening from the West Philadelphia Decorating Company, Millbourne, Pennsylvania. After two extradition hearings, on June 2 and June 20, 1966, Huntt and his co-defendant Weaver were finally returned to Pennsylvania where they stood trial in Delaware County on October 13, 1966. Huntt was not represented by counsel at either of the two extradition hearings.

Court-appointed counsel, Arnold Rubin, Esquire, was assigned to represent Huntt sometime between October 4 and October 13. The first time Huntt conferred with his counsel was for a short period (according to the relator, ten minutes) on the day of the trial, in the courtroom. However, Rubin had access to the Public Defender's files and had discussed the case with the Public Defender's office before the trial.

Before the Commonwealth opened its case, Weaver changed his plea from not guilty to guilty in open court and before the jury. On October 14, 1966 the jury found Huntt guilty of burglary, larceny and conspiracy. Huntt was sentenced to two to four years imprisonment by the trial judge; Weaver received a one to three-year sentence, later reduced to eleven and a half to twenty-three months.

The relator argues that his incarceration violates his constitutional rights for the following reasons:

1) that the failure to provide him with counsel at the two extradition hearings violated his rights under the due process clause of the Fifth Amendment, including the right to travel; the privileges and immunities clause of the Fourteenth Amendment and its protection of the right to travel; the right to counsel under the Sixth Amendment; and the equal protection clause of the Fourteenth Amendment;

2) that counsel at his trial was so inadequate and ineffective as to violate due process under the Fourteenth Amendment;

3) that the fact that he was given a sentence harsher than that accorded his co-defendant, who pleaded guilty, constituted a denial of equal protection and the imposition by the Commonwealth of an unconstitutional condition on his right to a trial by jury; and

4) that his co-defendant's change of plea to guilty in the presence of the jury so prejudiced his case as to violate due process.

We find that none of these claims affords the relator relief on habeas corpus.

## I. EXTRADITION

■■ Illegal extradition does not afford a basis for relief by way of habeas corpus. United States ex rel. Kelly v. Fullam, 224 F.Supp. 492 (E.D.Pa.1963); United States ex rel. Owens v. Russell, 260 F.Supp. 638, (M.D.Pa.1966). The Supreme Court has stated that "the power of a court to try a person for crime is not impaired by the fact that he has been brought within the court's jurisdiction by reason of 'forcible abduction.'" Frisbie v. Collins, 342 U.S. 519, 522, 72 S.Ct. 509, 511, 96 L.Ed. 541 (1952). Here, the relator complains of a lack of counsel at extradition. But if "forcible abduction" for trial is no violation of due process, lack of counsel on extradition certainly is not.

■■ Whether the failure of Maryland to provide counsel at extradition is structured as a deprivation of the right to travel, or a denial of equal protection to those who cannot afford to pay for counsel, or a violation of the right to counsel under the Sixth Amendment, the petition must fail in this regard.

"* * * due process of law is satisfied when one present in court is convicted of crime after having been fairly apprized of the charges against him and after a fair trial in accordance with constitutional procedural safeguards. There is nothing in the Constitution that requires a court to permit a guilty person rightfully convicted to escape justice because he was brought to trial against his will." Frisbie v. Collins, 342 U.S. at p. 522, 72 S.Ct. at p. 512.

## II. COUNSEL AT TRIAL

The relator argues that counsel provided him at trial was so inadequate and ineffective because of the fact that he first met with relator on the day of the trial, and then for only a brief period, that there was a denial of the effective assistance of counsel.

■■ It is generally agreed that the fact that counsel is appointed just before trial is not *per se* determinative of the issue of ineffective assistance of counsel. Commonwealth ex rel. Washington v. Maroney, 427 Pa. 599, 235 A.2d 349 (1967); but see United States v. Helwig, 159 F.2d 616 (C.A.3, 1947). Nonetheless, where the appointment of counsel is sufficiently late to be "inherently prejudicial" to the defendant's rights, the relator has made out a *prima facie* case. United States ex rel. Mathis v. Rundle, 394 F.2d 748 (C.A.3, May 7, 1968); Fields v. Peyton, 375 F.2d 624 (C.A.4, 1967); Twiford v. Peyton, 372 F.2d 670 (C.A.4, 1967); contra, Commonwealth ex rel. Washington v. Maroney, supra. It is then incumbent upon the respondent to rebut the presumption of actual harm.

The *Mathis* case, supra, is similar to this one except that the facts there were more strongly in favor of the relator. A voluntary defender was appointed to represent the relator on the eve of trial. The defender did not have an opportunity to interview the relator but did have access to the notes of a colleague who had previously conducted an interview. In addition, trial counsel spent about a half-hour with witnesses in the courtroom just before the trial. Several putative eyewitnesses to the stabbing in question failed to appear at the trial. As we read the opinion of the court, these facts were sufficient to establish a *prima facie* case of ineffective assistance of counsel. The court found, however, that the testimony of counsel at the habeas corpus hearing rebutted the relator's *prima facie* case. Apparently, this finding was based on the testimony of counsel that he had "no reasonable expectation" that the absent witnesses would aid in the defense. Furthermore, he was "unable to say that he had been insufficiently prepared to go to trial."

■ Here, counsel met with the relator for a short period (according to the relator, ten minutes) on the day of the trial. In addition, within ten days before trial, he had the benefit of access to

the defender's files, which included several short memoranda written by lawyers and investigators for the defender's office. Furthermore, he discussed "trial techniques" with the office. Here, then, even though the first interview with the relator was on the day of the trial, the appointment of counsel was in the period after the relator had been granted a continuance, October 4, 1966, until the day of trial, October 13. Arguably, then, this is not the kind of case where there is a late appointment of counsel of an "inherently prejudicial" nature. We assume, however, that this was, and conclude, on the basis of *Mathis*, that the Commonwealth has made a showing sufficient to rebut relator's *prima facie* case.

The evidence against the two defendants was circumstantial. Both men were seen at the place of the burglary on the evening of the crime. Several hours later, they were apprehended in Baltimore, Maryland on a traffic violation while driving a car, in the partially open trunk of which was the stolen safe. In addition, Huntt had worked for the owner of the safe and had some familiarity with the premises.

Counsel for Huntt testified at the hearing that he had investigated all of Huntt's contentions that would be relevant to the defense. This is not a case where hasty preparation deprived the defendant of any possible defense or the presence of any witnesses otherwise available. Compare Twiford v. Peyton, 372 F.2d 670 (C.A.4, 1967), with United States ex rel. Kelley v. Rundle, 242 F. Supp. 708 (E.D.Pa.1965), aff'd 353 F.2d 214 (C.A.3, 1965). It was stipulated at the habeas corpus hearing that there were no alibi witnesses.

The relator suggests that an indication of the ineffectiveness of counsel was the failure to call the codefendant Weaver to testify; in the light of the fact that it was Huntt's contention that it was Weaver and not Huntt who was responsible for the crime and the presence of the safe in the trunk of Huntt's automobile. But defense counsel testified that he decided not to call Weaver after conferring with Weaver's attorney and learning what Weaver would say. Knowing what testimony he could expect from Huntt, defense counsel concluded that the testimony of Weaver would have been damaging to Huntt's case. Whether or not this decision might have been a strategic error is a question not before us. We do not sit to review trial tactics. In any case, if counsel erred in his judgment, and there is no evidence of this, it did not result from any haste in his appointment.

In spite of the fact that the relator was not denied the effective assistance of counsel we are constrained to indicate our disapproval of the fact that his counsel first conferred with him on the day of the trial. It is not only important that justice be done, but also that such procedures be used that it is apparent that justice is being done.

## III. CO-DEFENDANT'S CHANGE OF PLEA TO GUILTY BEFORE THE JURY

On the first day of the trial, October 13, 1966, in open court before the jury, Weaver, Huntt's co-defendant, changed his plea of not guilty to guilty. No instruction was given to the jury, nor was any requested, that they should not consider Weaver's guilty plea as evidence of Huntt's guilt. Relator complains that this change of plea before the jury, absent an effort to cure the possible prejudice to the relator through judicial instruction or impanelling a new jury, constituted a denial of due process on the authority of Hudson v. State of North Carolina, 363 U.S. 697, 80 S.Ct. 1314, 4 L.Ed.2d 1500 (1960).

*Hudson* was really a pre-Gideon right to counsel case involving three co-defendants. The relator and one co-defendant were without counsel when the trial began. Although counsel for the other co-defendant offered to represent all three shortly after the trial began, this was not permitted by the court because of a possible conflict of interest. At the conclusion of the state's case, a plea of

guilty was tendered on behalf of the co-defendant represented by counsel and upon its acceptance by the court, the only lawyer in the case then withdrew.

The Court pointed out that the petitioner was "left to go it alone" at the "moment of great potential prejudice" when the co-defendant's plea was entered and counsel withdrew. The Court also noted that "[t]he precise course to be followed by a North Carolina trial court in order to cure the prejudice that may result from a codefendant's guilty plea does not appear to have been made entirely clear by the North Carolina decisions." Mr. Justice Stewart concluded:

" * * * We hold that the circumstances which thus arose during the course of the petitioner's trial made this a case where the denial of counsel's assistance operated to deprive the defendant of the due process of law guaranteed by the Fourteenth Amendment. The prejudicial position in which the petitioner found himself when his codefendant pleaded guilty before the jury raised problems requiring professional knowledge and experience beyond a layman's ken. * * * * " Hudson v. State of North Carolina, supra, at 703–704, 80 S.Ct. at 1318.

Huntt, of course, was represented by counsel at all stages of the trial. However, we think we must go further and inquire whether Weaver's plea under the circumstances resulted in a "failure to observe that fundamental fairness essential to the very concept of justice." Lisenba v. People of State of California, 314 U.S. 219, 236, 62 S.Ct. 280, 290, 86 L.Ed. 166 (1941). "[T]he fact that a trial court error is prejudicial to defendant [does not] necessarily transform an otherwise fair trial into one which offends Fifth Amendment due process. It does not do so unless it has the effect of converting what was otherwise a fair trial into one which is repugnant to an enlightened system of justice." Vandergrift v. United States, 313 F.2d 93, 96 (C.A.9, 1963).

In our judgment, the error complained of here falls far short of reaching the stature of the constitutional concept of fundamental unfairness. Curiously enough, neither counsel's diligence nor our own research have turned up any authority on the precise question involved, *i. e.*, whether a co-defendant's guilty plea before the jury, without more, makes the remaining defendant's trial constitutionally unfair. However, in Booth v. United States, 57 F.2d 192 (C.C.A.10, 1932), the trial court itself instructed the jury, *inter alia*, that certain of the named defendants had pled guilty, with no cautionary instruction and without objection or exception, as here. In affirming defendant's conviction, the court said, at page 197:

" * * * In the instruction complained of, the trial court advised the jury as to the disposition of the case as to certain defendants who had entered pleas of guilty, and as to the sustaining demurrers and motions for directed verdicts as to other defendants. No objections or exceptions were interposed to this instruction. It is the duty of a defendant to take his exceptions to the charge of the court in the presence of the jury before it retires to consider the verdict. * * *

"There is some qualification of this general rule where prejudicial error is obvious in a criminal case, and a failure to consider such error would result in a miscarriage of justice. An appellate court should of its own motion recognize and consider such errors. The reason for this qualification of the general rule is that it is the duty of the courts to give protection against unlawful deprivation of liberty. * * * "

The court held that the error, if any, was "only incidental." It seems to us *a fortiori* that if an asserted trial error is not so fundamental as to be noticed without objection, it could not conceivably be said that it was one which transformed the trial "into one which is repugnant to an enlightened system of justice." Vandergrift v. United States, supra.

That is particularly true here. There was no doubt that a theft had occurred and that both Huntt and Weaver were in the car containing the stolen safe. Huntt's theory of defense, according to his counsel, was that Weaver was responsible and that he, Huntt, was in the car without knowledge of what Weaver had done. Weaver's plea was totally consistent with this defense. In any event, the only issue as to Huntt was his participation in the venture.

In United States v. Falcone et al., 109 F.2d 579 (C.C.A.2, 1940), where defendants complained of guilty pleas by co-defendants in the jury's presence, Judge Learned Hand said, at page 582:

" * * * On any theory the chance that harm was done seems to us fanciful; the existence of some kind of conspiracy was proved beyond peradventure, and the only important issue was whether these appellants were connected with the enterprise. * * * "

We find this ground for relief without merit.

## IV. DISPARITY IN SENTENCING

Huntt's final contention is that the imposition on him of a sentence harsher (two to four years) than that meted out to his co-defendant who pleaded guilty (one to three years, later reduced to eleven to twenty-three and a half months) constituted an unwarranted difference in treatment violative of the equal protection clause of the Fourteenth Amendment, as well as an unconstitutional condition placed on the right to a jury trial.

■ There is probably no area of judicial function as completely committed to the judge's discretion as that of sentence. This result is a necessary corollary of the two basic ingredients of sentence: the crime and the man. GILBERT & SULLIVAN'S "object all sublime * * * To let the punishment fit the crime"[1] is, in enlightened penology, no longer the single determinative cri-

terion. Rather, sentencing embraces considerations of the nature of the crime and the nature of the criminal. Thus, as one court has wisely said: "The court below in determining the appropriate penalty considered the criminal act, but not the criminal himself and in so doing committed an abuse of discretion." Commonwealth v. Green, 396 Pa. 137, 150, 151 A.2d 241, 247 (1959). Cf. Devitt, How Can We Effectively Minimize Unjustified Disparity In Federal Criminal Sentences, 42 F.R.D. 218, 222 (1966).

The consideration of the criminal himself is peculiarly within the sentencing judge's domain. Only he can judge the attitude and demeanor of the defendant. Only he can judge defendant's repentance or lack of it. Only he can appraise defendant's awareness of the seriousness of his offense and his understanding of the affront to society. It is quite probably true that no two individuals are exactly alike and the variables between two individuals are almost limitless. We have mentioned only a few of them, none of which is easily articulated or reduced to form on the record. No record, for example, could perpetuate a scowl of resentment or bland indifference. Indeed, failing to consider individual differences and "imposing the *same* sentences on the co-defendants [is] to sentence *unequally.*" Rubin, Disparity and Equality of Sentences—a Constitutional Challenge, 40 F.R.D. 55, 71 (1965).

■ Beyond intrinsic individual variables are the extrinsic facts,—the degree of instigation and participation in the crime, previous record, number of dependents, to mention a few. Unconstitutional discrimination only exists where there is no reasonable or rational basis for differentiation. When extrinsic and intrinsic differences are combined, it is apparent that it would be a rare case that would justify a conclusion that equal protection had been denied.[2] This is not such a case.

---

1. The Mikado, Act II.

2. Cf. United States v. Wiley, 278 F.2d 500 (C.A.7, 1960), where a minor defendant

with no previous record and who was merely an accessory was sentenced after trial to three years imprisonment, while a co-defendant, the ringleader with four

We cannot know the intrinsic differences between Huntt and Weaver, or the judge's appraisal of them. However, what we have referred to as the "extrinsic facts" alone are such as to provide a reasonable basis for the disparate sentences.

Weaver had one prior felony conviction, in 1960, and this is the only prior entry on his record. Huntt's prognosis, on the other hand, was an unhappy one. Although he had no prior felony convictions, he had had numerous arrests since 1950, with various resolutions.[3] In addition, because of Huntt's former business relationship with and access to the victim of the burglary, the West Philadelphia Decorating Company, as a general painting contractor, Huntt's participation may have been more culpable than Weaver's. Indeed, Weaver may have been thought to have been an accomplice. See Huntt's Initial Classification Report, p. 3. Furthermore, it was in Huntt's car that the safe was taken from Pennsylvania and in which it was found in Baltimore.

A factor which may have had some weight in the court's decision to give Weaver a lighter sentence appears in the record of the sentencing hearing of January 6, 1967. Apparently Weaver was supporting two children living at home and his wife was expecting a third. A child by a previous marriage living in New York was also being supported by Weaver. The court, in balancing the social costs of Weaver's incarceration, may well have weighed protection of society through incarceration against the potential injury to Weaver's family in giving Weaver a lighter sentence than Huntt. The record reveals, moreover, that counsel for Huntt stated that Huntt, too, wanted to return to support his family.

But at the time of sentencing Huntt had been separated from his wife for three years and his three children were living with their grandparents.

We are not here called upon to decide whether a guilty plea versus a not guilty plea, with nothing more, is enough to justify disparate sentences. Nevertheless, in addition to the factors already mentioned, "there is much to be said for the [argument] that on a plea of guilty the defendant has already entered on the rehabilitative process, that he is purging himself thereby of his wrongdoing, and it must be conceded that a sense of contrition therefor must have motivated his conduct and, accordingly, consideration might well be given therefor." United States ex rel. Starner v. Russell, 378 F.2d 808, 811 (C.A.3, 1967), cert. den. 389 U.S. 889, 88 S.Ct. 166, 19 L.Ed.2d 189 (1968).

We are not convinced that the imposition of different sentences on Huntt and Weaver "clearly flouted constitutional standards of due process." Ibid., 378 F.2d p. 812. Accordingly, interference by us "would be a flagrant trespass of an independent state judiciary." Ibid.

For all of the foregoing reasons, we conclude that the relator has failed to show that he has been deprived of any constitutional rights which would permit his release from custody.

There is probable cause for appeal.

The court is deeply indebted to David Pittinsky, Esquire, for his dedicated and gratuitous representation of relator. His able arguments caused us considerable trouble and thought, which is as it should be.

The writ will be denied, and it is so ordered.

prior felony convictions, was sentenced to two years after a plea. The court vacated the sentence, not on constitutional grounds, but "exercising its supervisory control of the district court in aid of its appellate jurisdiction." p. 503.

3. Guilty plea to charge of failure to pay a hotel bill, and drunk and disorderly; restitution paid for passing worthless checks.