Benjamin WEATHINGTON, Petitioner,

v.

Louie L. WAINWRIGHT, Secretary, Department of Offender Rehabilitation, Respondent.

No. 77–5163–Civ–JE.

United States District Court,
S. D. Florida,
Miami Division.

May 24, 1979.

Thomas G. Murray, Asst. Public Defender, Miami, Fla., for petitioner.

Joel D. Rosenblatt, Asst. Atty. Gen., Miami, Fla., for respondent.

## ORDER OF DISMISSAL

EATON, District Judge.

Benjamin Weathington has filed a Petition for Writ of Habeas Corpus attacking a thirty-five (35) year sentence of imprisonment imposed by the Criminal Court of Record in and for Dade County, Florida, on October 7, 1971. The sentence was imposed pursuant to a jury verdict of guilty to the offense of robbery.

Petitioner is presently in Respondent's custody.

As grounds for relief, Petitioner has alleged that:

The imposition of a thirty-five (35) year sentence after the petitioner has demanded his Sixth Amendment right to trial by jury violates due process of law as guaranteed by the Fourteenth Amendment where a portion of that sentence was imposed solely as a penalty on the exercise of petitioner's constitutional right to trial by jury.

The record reveals that on October 23, 1969, Petitioner and co-defendant, Liviticus Thompson, were charged by information with the offense of robbery. On September 13, 1971, co-defendant Thompson pled guilty to the offense of robbery and was sentenced to a term of five (5) years imprisonment imposed pursuant to a plea agreement entered into by defense counsel and the State Attorney. Appendix 4, 5.

Petitioner exercised his right to trial by jury. On October 5, 1971, Petitioner pro-

ceeded to a jury trial which resulted in a verdict of guilty.

After the jury returned its verdict, but prior to sentencing, the following colloquy occurred between the court and respective counsel.

MR. THOMAS MORGAN: We would just state, your Honor, and bring to the Court's attention that the co-defendant alleged in this crime who certainly appears to be much more a vicious individual, was allowed to plead guilty to five years.

THE COURT: State recommended that and the officers and victim recommended that.

MR. THOMAS MORGAN: Yes, your Honor, and that this man was offered—

THE COURT: It wasn't my idea. It was their idea.

MR. THOMAS MORGAN: I believe he was offered in the neighborhood of two or three. I'm not exactly sure.

MR. MICHAEL MORGAN: Your Honor, that offer was never made to this defendant.

MR. THOMAS MORGAN: I was under the impression it was the offer made to the two men I negotiated with Mr. Shenberg, and if I am wrong, Mr. Shenberg can certainly correct it. If I am not, approximately.

THE COURT: Weathington.

MR. BROWN: Your Honor, I have something to say, if I may.

Judge, it's been the experience when a person goes to a jury trial and demands his Constitutional right to a jury trial he's penalized in receiving a higher penalty than a person who pleads guilty or takes a nonjury trial, and I ask the Court in considering this case not to follow that practice that's been followed in all the courts I have been in. Thank you.

THE COURT: Let me end this in response to what Mr. Brown said.

Something I think we always have to look at what is a consideration to someone who is showing signs of rehabilitation although those enter a guilty plea that is the first sign. Now, the practice of plea negotiations where the State and the defense enter into negotiations and the victims and the police officers decide they would like a certain sentence almost invariably with few exceptions, the Court, regardless of thoughts on some of these cases, rides with you and ratifies the agreement and the sentences in accordance with what you all have worked out amongst yourselves and what you all want. Well, that is it.

MR. BROWN: Just the practice as a result of this policy plea negotiation and then penalizing a man when he goes to a jury trial means a man who is innocent who is found guilty gets a higher sentence than a guilty man that pleads guilty.

THE COURT: Well, Mr. Brown, I think you're in error as to that occurring. I can only point out I know not about the other divisions, I can only tell you about my own.

I can cite you one nonjury robbery right off the bat that drew 25. If you think that is light, that is all right. Appendix 11, 12, 13.

Thereupon, the court, after denying Petitioner's motion for a presentence investigation, sentenced Petitioner to a thirty-five (35) year term of imprisonment.

Thus, the record reveals that before sentence was imposed, defense counsel informed the court that he had entered into plea negotiations with the state. However, the prosecutor denied that any plea bargain had been offered to the Petitioner. The court indicated that it had not participated in any such plea agreement and denied that it penalized a person who exercised his right to a jury trial.

Petitioner raised the following ground on appeal to the Third District Court of Appeal.

Whether the thirty five years sentence imposed on the defendant by the trial judge after the denial of a pre-sentence investigation constitutes a denial of due process, an infliction of cruel and unusual punishment and the extraction of a gross

penalty on the defendant's exercise of his right to trial by jury guaranteed by the state and federal constitutions.

Petitioner's conviction was affirmed by the Third District Court of Appeal on May 30, 1972. See *Weathington v. State*, 262 So.2d 724 (Fla. 3rd Dist.Ct.App. 1972).

In its affirmance, the appellate court specifically acknowledged that if petitioner "receive[s] a heavy sentence because he dare[s] to ask for a jury trial," such sentence would be unconstitutional. However, the appellate court specifically held that the record did "not substantiate appellant's assertion that he was denied any right which would constitute a denial of due process." *Id.* at 725.

Judge Barkdull, in his concurring opinion, specifically noted that the record did not disclose "a course of conduct resulting in a greater imposition of sentence on the defendants convicted by a jury (as opposed to those defendants convicted after a nonjury trial)." *Id.* at 725. Thus the record before the appellate court did not contain any factual matters sufficient to establish a "course of conduct on the part of criminal court judges to impose 'harsher' sentences upon defendants who were convicted by juries."

The Florida Supreme Court denied certiorari on September 28, 1972. See 267 So.2d 330. The U.S. Supreme Court denied certiorari on April 16, 1973. See 411 U.S. 933, 93 S.Ct. 1905, 36 L.Ed.2d 393.

On January 21, 1976, this Court dismissed Petitioner's claim for failure to exhaust state remedies insofar as Petitioner introduced what was at that time new evidence consisting of an American Judicature Society survey on "Criminal Justice in Dade County" and affidavits prepared in 1975 indicating that Dade County Criminal Court judges imposed harsher sentences as to those defendants who exercised their rights to trial by a jury. (See Order of Dismissal, Case No. 75–2515–Civ–PF.)

Petitioner has since exhausted his state remedies and has once again presented this Court with a Petition for Writ of Habeas Corpus and a memorandum of law in support thereof based on the same issue as his 1976 petition. In addition to the original study and affidavits, Petitioner has presented this Court with further information in response to this Court's Order of October 24, 1978, stating specifically Petitioner's reasons for requesting an evidentiary hearing and including an affidavit by Judge Ellen Morphonious. Finally, Petitioner has supplied this Court with additional evidence consisting of an affidavit and a study of one William Wilbanks, Associate Professor in the Department of Criminal Justice at Florida International University, Miami, Florida. Wilbanks has formulated a program to analyze the computerized file of the Circuit Court of the Eleventh Judicial Circuit of Florida, to determine if defendants who pled not guilty to a charge of robbery, exercising their right to trial, during the period from 1971–1978, received substantially greater sentences than the sentences received by defendants who pled guilty.

## PETITIONER'S CASE IN COMPARISON WITH PREVIOUS SIMILAR CASES REVIEWED BY THIS COURT

In the case at bar, Petitioner raises substantially the same issue as was raised in the previous cases of *Blackmon v. Wainwright*, Case No. 77–5637–Civ–JE, and *Cole v. Wainwright*, Case No. 77–5842–Civ–CA, which were dismissed by this Court.

In *Blackmon*, the precise issue presented was:

> Whether his Fifth Amendment right to due process and his Sixth Amendment right to trial by jury were infringed by imposition of a greater sentence upon conviction after trial than he had previously been offered by the trial court in plea negotiation.

Petitioner had claimed that the trial judge agreed to sentence him to 50 years imprisonment if he pleaded guilty. After a trial by jury, petitioner was sentenced to 101 years. The *Blackmon* case clearly stated that,

> there can be no question but that an accused cannot be punished by a more

severe sentence because he has unsuccessfully exercised his constitutional right to stand trial rather than to plead guilty. *Baker v. United States*, 412 F.2d 1070, 1073 (5th Cir. 1969).

But the pivotal question in the *Blackmon* case became one purely of fact, i.e., "whether the trial judge agreed to sentence Blackmon to 50 years if he pleaded guilty."

In dismissing *Blackmon*, this Court stated the following:

> The petitioner has filed affidavits and an American Judicature Society Survey on Criminal Justice in Dade County, all of which support his claim that certain Dade County Circuit Judges on occasion sentence those persons who insist upon a trial more severely than those who plead guilty. This is a practice which is to be deplored and condemned, wherever it is found to exist. The question in this habeas corpus proceeding, however, is not whether there is a pattern and practice of penalizing persons demanding trial in Dade County Courts, but whether the record establishes that the Judge penalized this particular defendant in this specific case.

The record in *Blackmon* revealed that the judge had not actually made such a commitment and the case was dismissed.

In *Cole v. Wainwright*, the precise issue complained of was that:

> The imposition of a 139 year sentence after petitioner has exercised his Sixth Amendment right to trial by jury violated Due Process of Law as guaranteed by the Fourteenth Amendment where had petitioner waived his right to trial by jury he would have received a sentence of no more than 20 years and where a substantial portion of the excess over 20 years was imposed solely as a penalty on the exercise of that constitutional right.

The record in *Cole* offered no more than the record in *Blackmon* in the way of showing that an *individual* had been penalized. In fact, this Court, in examining the facts of *Cole* took note of the justification for petitioner's lengthy sentence in citing the Florida District Court of Appeal decision which stated:

> Not only were the sentences imposed expressly provided for by law, but the facts of the case were not such as to invite leniency in sentencing. The conviction of the defendant necessarily implies the jury found the facts to be as indicated by the state's evidence. Thereby it was shown the defendant hijacked a truck at gunpoint, pistol whipped the driver and threw him out of the truck while travelling at thirty miles per hour, and that when about to be apprehended, he fired several shots at two police officers, one at close range. *Cole v. State*, 262 So.2d 902, 905 (Fla. 3d Dist.Ct.App. 1972).

The case at bar, however, presents an interesting distinction from the *Blackmon* and *Cole* cases. In the instant case, Petitioner's co-defendant, Liviticus Thompson, who was the gunman and ostensibly more culpable than Petitioner, pled guilty and received only a five year sentence—one seventh that of Petitioner's thirty-five year sentence which he received subsequent to his jury trial. Petitioner also claims that he was offered a two to three year sentence if he would plead guilty.[1] Neither defendant had a record of prior felonies.[2]

This disparity in sentencing the co-defendant was considered by the Florida Third District Court of Appeal which stated:

> While such a diversity in results between the two paths pursued by the convicted actors may be quite shocking to the judicial conscience of the appellate court, we must hold that since the sentence of thirty-five years in the state penitentiary is within the legal limits set by the statute, the sentence is not subject to review in this court. See *Brown v. State*, 152 Fla. 853, 13 So.2d 458 (1943); cf. *Cole v. State*,

---

1. This is an unresolved matter of factual dispute.

2. This fact, recently submitted to the Court, was not a factor considered by Judge Morphonious, as she refused to hold a pre-sentence investigation prior to sentencing.

Fla.App. 1972, 262 So.2d 903. *Weathington v. State,* 262 So.2d at 725.

Several Fifth Circuit cases have held that judicial discretion shall not be interfered with so long as the sentencing is within the statutory limits and not so disproportionate as to shock human sensibilities. *Capuchino v. Estelle,* 506 F.2d 440 (5th Cir. 1975); *Yeager v. Estelle,* 489 F.2d 276 (5th Cir. 1973). Petitioner, in the case at bar, was sentenced to 35 years for the crime of robbery. The maximum in the State of Florida for this crime is life. While Petitioner's sentence was far greater than that of his co-defendant who pleaded guilty, it is well known and accepted that the system of plea bargaining offers rewards to those who cooperate. As stated in *Bordenkircher v. Hayes,* 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978):

> To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort, see *North Carolina v. Pearce, supra,* 395 U.S. [711], at 738, 89 S.Ct. [2072], at 2082, [23 L.Ed.2d 656] (opinion of Black, J.), and for an agent of the State to pursue a course of action whose objective is to penalize a person's reliance on his legal rights is 'patently unconstitutional.' *Chaffin v. Stynchcombe, supra,* 412 U.S. [17], at 32–33, n. 20, 93 S.Ct. [1977], at 1986, [36 L.Ed.2d 714.] See *United States v. Jackson,* 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138. But in the 'give-and-take' of plea bargaining, there is no such element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer. 54 L.Ed.2d at 610.

■ Therefore, while Petitioner received a 35 year sentence—one far greater than that of his co-defendant—the sentence was also far less than the maximum life sentence for robbery in this State. While Petitioner's view is that he has been "punished" for exercising his right to jury trial, it is the view of this Court that his sentence was not atypical for a crime of this nature. Further, co-defendant Thompson's lighter sentence, rendered as a reward for his entering a plea of guilty, does not also entitle Petitioner to a lesser sentence.

The issue of disparity of sentencing between co-defendants has been discussed in *United States v. Russell,* 285 F.Supp. 765 (E.D.Pa.) aff'd, 406 F.2d 774 (3rd Cir. 1969). In *Russell,* petitioner complained that his sentence, 2 to 4 years longer than that of his co-defendant, was violative of the equal protection clause of the Fourteenth Amendment, as well as an unconstitutional condition placed on his right to a jury trial. The court, in dismissing his complaint, stated that "sentencing embraces considerations of the nature of the crime and the nature of the criminal." *Id.* at 770.

The case elaborated upon the reasons that judicial discretion is so widely accepted. Of significance, the court stated:

> The consideration of the criminal himself is peculiarly within the sentencing judge's domain. Only he can judge the attitude and demeanor of the defendant. Only he can judge defendant's repentances or lack of it. Only he can appraise defendant's awareness of the seriousness of his offense and his understanding of the affront to society. It is quite probably true that no two individuals are exactly alike and the variables between two individuals are almost limitless. We have mentioned a few of them, none of which is easily articulated or reduced to form on the record. *Id.* at 770.

[Finally, the *Russell* case stated that "unconstitutional discrimination only exists where there is no reasonable or rational basis for differentiation." *Id.* at 770.

In sentencing Petitioner, Judge Morphonious stated that one of her considerations in sentencing was whether or not an individual was showing "signs of rehabilitation." She expressed her belief that the entering of a guilty plea by a defendant is a "first sign." Such may be considered a "reasonable or rational basis" for her differentiation in sentencing. It further should be pointed out that the imposition of the five (5) year sentence upon the co-defendant was in accordance with a plea bargain which the court had accepted. The

court had no recommendation of sentence as to Weathington.

 Petitioner has requested a hearing in the instant case, claiming that certain issues remain in dispute. Primary among these issues is whether or not Petitioner was previously offered a 2 to 3 year sentence, provided that he submit to a guilty plea. However, regardless of whether or not this offer was made, it is well established law that a petitioner has no right to insist upon a prosecutor's plea bargain offer if he chooses to reject the offer and go to trial. In *United States v. Resnick*, 483 F.2d 354 (5th Cir. 1973), the court, in rejecting a petitioner's complaint that the sentence imposed after a jury verdict of guilty was greater than that offered in the plea bargain, stated.

> It stretches our credulity to think that one who declines to plead guilty with a recommended sentence acceptable to the court should nevertheless be given the benefits of a bargain available to, but rejected by, him. *Id.* at 358.

Petitioner further claims that a matter in dispute is whether there exists a pattern and practice of discrimination of imposing a heavier sentence upon those who refuse to plead guilty. Petitioner has now submitted two studies which he claims establish a "*prima facie* showing that a 'pattern and practice' exists," and that a hearing in this Court is essential to allow the Respondent to rebut the showing. Petitioner cites *Castaneda v. Partida*, 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977), for the proposition that his use of statistics is a sufficient *prima facie* showing. However, the *Castaneda* case was one in which the statistical showing of discrimination against Mexican-Americans in grand jury selection had no logical explanation.

Petitioner's statistics, therefore, do not make a *prima facie* showing which the Respondents should be obliged to rebut.

In view of the above, a hearing in this case would serve no purpose.

Wherefore, Petitioner's Writ of Habeas Corpus, be and the same. is hereby DISMISSED.