476 So.2d 197 (1985)
CITY OF DAYTONA BEACH, Petitioner,
v.
Leonard Del PERCIO and Laura Iris Moore, Respondents.
No. 65384.
Supreme Court of Florida.
August 30, 1985.
Rehearing Denied October 28, 1985.
*199 Frank B. Gummey, III, City Atty., Robert G. Brown and Reginald E. Moore, Daytona Beach, for petitioner.
Richard L. Wilson, Orlando, and Eric A. Latinsky, Daytona Beach, for respondents.
EHRLICH, Justice.
We have before us for review a decision of the Fifth District Court of Appeal, Del Percio v. City of Daytona Beach, 449 So.2d 323 (Fla. 5th DCA 1984). The decision expressly and directly conflicts with the decision in Fillingim v. State, 446 So.2d 1099 (Fla. 1st DCA 1984), upholding an ordinance similar to the one invalidated in this case. We have jurisdiction. Art. V, § (3)(b)(3), Fla. Const.
The City of Daytona Beach enacted ordinance 81-334, creating section 5-25 of the City Code prohibiting certain behavior in bars. The relevant portions of the ordinance include:
(b) No female person shall expose to public view any portion of her breasts below the top of the areola or any simulation thereof in an establishment dealing in alcoholic beverages.
... .
(d) No person maintaining, owning or operating an establishment dealing in alcoholic beverages shall suffer or permit any female person to expose to public view any portion of her breasts below the top of the areola or any simulation thereof within the establishment dealing in alcoholic beverages.
City police issued a number of citations enforcing the ordinance, and respondents were among those cited under subsection (d). Del Percio was part owner of a lounge where a woman danced topless. Del Percio filed an unsuccessful motion to dismiss the charges against him in county court challenging the constitutionality of the ordinance, then pled nolo contendere reserving his right to appeal. Moore was in charge of a bar where the dancer wore flesh-colored tape over her areolae. She also unsuccessfully moved for dismissal on constitutional grounds, and was convicted in a non-jury trial. Both defendants appealed to the circuit court where their convictions were affirmed. The district court granted certiorari and reversed the convictions. The majority held that the ordinance was "vague, overbroad, not fairly enforceable, and thus unconstitutional." 449 So.2d at 323. The court found that the ordinance had been construed several different ways by the lower courts, demonstrating the vagueness of the language and distinguishing the case from other cases where similar language was found constitutional. It also found that, since all exposure of the lower part of the breast was prohibited, the ordinance was overbroad because socially acceptable attire such as swimsuits and low-cut evening gowns fell within the prohibition.
We find that the ordinance is neither vague nor overbroad, and therefore quash the decision of the district court.

VAGUENESS
The ordinance prohibits public exposure of a woman's breasts "below the top of the areola." Among the variant trial court interpretations of this language noted by the district court in support of its finding of vagueness are the following: only the areola itself need be covered; the areola must be covered by "a brassiere-type cover made of an opaque fabric which does not and cannot adhere directly to the breasts without the aid of supporting straps;" all portions of the breast below the top of the areola must be covered (this is the interpretation favored by the City); and all portions of the breast below the top of the *200 areola must be covered, with the exception of "those types of attire which are commonly accepted by modern society." 449 So.2d at 324-25. In her dissent, Judge Sharp suggested the ordinance be narrowly construed as "barring only the exposure of the female breast encompassing the area of the areola and that portion of the breast directly below it." 449 So.2d at 331 (Sharp, J., dissenting) (emphasis in original). Judge Sharp's reason for suggesting this construction is enlightening  in order to save a law from constitutional invalidity, a court should seek to interpret the law to avoid the problem.[1]
The fact that several interpretations of an ordinance may be possible does not render a law void for vagueness. "Words inevitably contain germs of uncertainty" but when regulations "are set out in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with, [there is no] sacrifice to the public interest'". Broadrick v. Oklahoma, 413 U.S. 601, 608, 93 S.Ct. 2908, 2913, 37 L.Ed.2d 830 (1973) (quoting United States Civil Service Commission v. National Association of Letter Carriers, AFL-CIO, 413 U.S. 548, 578-79, 93 S.Ct. 2880, 2897, 37 L.Ed.2d 796 (1973).
The district court found that the variant interpretations of the ordinance demonstrated it was vague and therefore unconstitutional. We conclude, on the other hand, that the plain meaning of the ordinance is clear, and that the variant interpretations are merely the result of various courts attempting to limit the reach of the ordinance to save it from constitutional invalidity. As we explain below, there is no need to limit the plain meaning of the ordinance because it raises no constitutional problem which may be addressed in this case. The plain meaning of the statute is, as the City suggests, that no portion of the breast directly or laterally below the top of the areola may be exposed to public view.

OVERBREADTH
Obviously, the clear meaning of the ordinance reaches many forms of socially acceptable attire. Indeed, there are probably many styles which would appear quite demure but which still manage to expose that which is forbidden here. However, the City has the power to regulate as it has, vis-a-vis the constitutional rights which may be raised by the parties in this case.

a. Twenty-first Amendment
In New York State Liquor Authority v. Bellanca, 452 U.S. 714, 101 S.Ct. 2599, 69 L.Ed.2d 357 (1981), the United States Supreme Court sustained the constitutionality of a state regulation similar to the one at issue here.[2] The basis of the challenge was that the first amendment protected nude barroom dancing. While the Court conceded that such behavior might involve the "barest minimum" of first amendment protection, it concluded that
the elected representatives of the State of New York have chosen to avoid the disturbances associated with mixing alcohol and nude dancing by means of a reasonable restriction upon establishments which sell liquor for on-premises consumption. Given the "added presumption in favor of the validity of the state regulation" conferred by the Twenty-first Amendment, California v. LaRue, 409 U.S. 109 at 118 [93 S.Ct. 390 at 397, 34 L.Ed.2d 342] [(1972)], we cannot agree with the New York Court of Appeals that the statute violates the United States Constitution. Whatever artistic or communicative value may attach *201 to topless dancing is overcome by the State's exercise of its broad powers arising under the Twenty-first Amendment. Although some may quarrel with the wisdom of such legislation and may consider topless dancing a harmless diversion, the Twenty-First Amendment makes that a policy judgment for the state legislature, not the court.
452 U.S. at 718, 101 S.Ct. at 2601.
The power vested in the states by the twenty-first amendment thus outweighs a tenuous first amendment interest. However, respondents here argue that the City is in no position to exercise the state's twenty-first amendment powers.
The state's power to regulate conditions in licensed premises is derived from its power to totally prohibit sales: "The state's power to ban the sale of alcoholic beverages entirely includes the lesser power to ban the sale of liquor on premises where topless dancing occurs." Bellanca, 452 U.S. at 717, 101 S.Ct. at 2601. While the City of Daytona Beach does not have the power to ban liquor sales, the powers of the state devolve to municipalities to "exercise any power for municipal purposes except as otherwise provided by law." Art. VIII, § 2(b), Fla. Const. "`Municipal purpose' means any activity or power which may be exercised by the state or its political subdivisions." § 166.021(2), Fla. Stat. (1983). "[T]he legislative body of each municipality has the power to enact legislation concerning any subject matter upon which the state Legislature may act, except:... . (c) Any subject expressly preempted to state or county government by the constitution or by general law." § 166.021(3). The Florida Constitution and the statutes thus imbue the City with the state's full police powers, including those under the twenty-first amendment, except those powers expressly preempted.
There is no express preemption of the power to regulate behavior in bars. The fact that the power to ban liquor sales has been preempted by the local option provision of article VIII, section 5, Florida Constitution, does not mean that the regulatory police powers derived from the power to ban are also preempted. See City of Miami v. Kayfetz, 92 So.2d 798 (Fla. 1957). Likewise, chapter 847, Florida Statutes (1983), which expressly preempts county and municipal authority to regulate, inter alia, obscene exhibitions, does not preempt the authority to regulate nonobscene exposure of the female breast below the top of the areola. No argument can be made that the instant ordinance regulates obscene behavior, since to do so would destroy any claim to protection under the first amendment. Instead, as discussed infra, what is regulated is nonobscene behavior which very easily can degenerate into obscene behavior.
Florida municipalities (and counties, see Fillingim v. State, 446 So.2d 1099 (Fla. 1st DCA 1984)) thus have the authority to exercise the regulatory power of the twenty-first amendment recognized in New York State Liquor Authority v. Bellanca, 452 U.S. 714, 101 S.Ct. 2599, 69 L.Ed.2d 357 (1981).

b. Application of the Overbreadth Doctrine
Given that the City of Daytona Beach stands in the same position as the State of New York, vis-a-vis exercise of twenty-first amendment power in the instant context, and given that the ordinance under review is for present purposes indistinguishable from the New York statute, and given that the New York statute withstood the federal constitutional challenge, one would think that our task was completed. However, the Bellanca decision does not indicate that an overbreadth challenge was made. The Bellanca analysis presumed that the New York law addressed nude barroom dancing. The language of the New York statute and the Daytona Beach ordinance, on the other hand, is broader in scope, and would also appear to regulate customers. Respondents argue that the ordinance prohibits socially acceptable attire such as swimsuits and low-cut evening gowns, and therefore reaches beyond the behavior sought to be regulated. *202 A fundamental misconception underlies this argument, and that is that the respondents in this case have standing to challenge any burden the ordinance may have on customers. Quite simply, respondents lack such standing.
To understand this position, we find it instructive to look to a seminal case in the area of overbreadth doctrine, Broadrick v. Oklahoma, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). The Broadrick Court explained the very limited circumstances under which the Court has altered its traditional rules of standing to allow a litigant clearly within the permissible scope of a statute to argue that the regulation is so broad that the constitutionally protected rights of others, not before the Court, are impermissibly restricted. In the first amendment area, this overbreadth argument is permitted because of the judicial assumption that an overbroad statute may well have a chilling effect on protected expression. An overbroad regulation may not be enforced until the scope of regulation is narrowed by a limiting construction or partial invalidation to remove the threat to protected expression. "Application of the overbreadth doctrine in this manner is, manifestly, strong medicine. It has been employed by the Court sparingly and only as a last resort." 413 U.S. at 613, 93 S.Ct. at 2916. Even when first amendment rights are implicated, the impetus to apply the doctrine attenuates as the expression of the party seeking to invoke the doctrine "moves from `pure speech' toward conduct and that conduct  even if expressive  falls within the scope of otherwise valid criminal laws." Id.
In this case, respondents' conduct is clearly within the scope of legitimate regulation, and the impetus to allow them to raise an overbreadth challenge is consequently attenuated. But the consideration which is fatal to any overbreath claim here is that in order for the respondents to be able to claim the ordinance is facially invalid because it impermissibly regulates socially acceptable attire of customers, the right of those customers to wear such attire must be protected under the first amendment. However, the right to dress as one pleases, vis-a-vis style and fashion, has little or no first amendment implications. In Richards v. Thurston, 424 F.2d 1281 (1st Cir.1970), the court held that the right to wear long hair was protected as a liberty interest under the due process clause of the fourteenth amendment. The court wrote:
We recognize that there may be an element of expression and speech involved in one's choice of hair length and style, if only the expression of disdain for conventionality. However, we reject the notion that plaintiff's hair length is of a sufficiently communicative character to warrant the full protection of the First Amendment. That protection extends to a broad panoply of methods of expression, but as the non-verbal message becomes less distinct, the justification for the substantial protections of the First Amendment becomes more remote. Nor do we see the logic of expanding the right of marital privacy identified in Griswold v. Connecticut, 381 U.S. 479 [85 S.Ct. 1678, 14 L.Ed.2d 510] (1965).
Our rejection of those constitutional protections in this case is not intended to denigrate the understandable desire of people to be let alone in the governance of those activities which may be deemed uniquely personal... . [W]e believe that the due process clause of the Fourteenth Amendment establishes a sphere of personal liberty for every individual, subject to reasonable intrusions by the state in furtherance of legitimate state interests.
424 F.2d at 1283-84 (citations and footnotes deleted). The court concluded that the school which sought to shear the plaintiff's long hair had not met the burden of proving a legitimate state interest. Closer to home, in South Florida Free Beaches v. City of Miami, 548 F. Supp. 53, 60 (S.D.Fla. 1982), aff'd, 734 F.2d 608 (11th Cir.1984), the court, citing to Richards, noted that "the right to dress as one pleases is among the panoply of liberties protected by the Fifth and Fourteenth Amendments," not the first amendment. And the United *203 States Supreme Court, while not addressing the right to dress as one pleases, has repeatedly noted as axiom that conduct must bear some communicative content to fall within the penumbra of first amendment protection. See, e.g., Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969); cf. United States v. O'Brien, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968) (not all conduct containing communicative elements is necessarily protected, and even if so the protection may be outweighed by sufficiently compelling state interest).
We do not have before us, therefore, the question of whether a customer's liberty interest would prevail over the City's regulatory interest, or even whether mere passive attendance in a bar wearing socially acceptable yet revealing attire is within the scope of the ordinance, i.e. whether this would constitute an "expos[ure] to public view."
Absent the standing to raise the liberty interest of customers, the only overbreadth claim that might be raised by respondents is that females in socially acceptable attire, forbidden by the ordinance, who engage in nominally expressive conduct, be they waitresses, dancers, or customers entered in a wet T-shirt contest, might be chilled, inter alia, in their first amendment right to do so. However, the ordinance doesn't chill such behavior, it prohibits it. And this prohibition of a very narrow range of expression, subject only to the barest minimum of first amendment protection, seems well within the scope of permissible regulation found in the United States Supreme Court's Bellanca decision. The "strong medicine" of the overbreadth doctrine is not available to cure the chill.

STATE CONSTITUTION
Our analysis of the vagueness and overbreadth claims has been in light of federal constitutional protections. We do not find any greater protection under the Florida Constitution. However, assuming that in this context the protections of speech and liberty, article I, sections 4 and 2, respectively, of the Florida Constitution, are coextensive with the equivalent federal protections, a question remains whether the twenty-first amendment or some other power may override these state protections.
The New York Court of Appeals, ruling on remand from the United States Supreme Court decision in Bellanca, reversing its initial invalidation, again invalidated the New York law, but solely on state constitutional grounds. Bellanca v. New York State Liquor Authority, 54 N.Y.2d 228, 429 N.E.2d 765, 445 N.Y.S.2d 87 (1981), cert. denied, 456 U.S. 1006, 102 S.Ct. 2296, 73 L.Ed.2d 1300 (1982). The majority reasoned that New York's state constitutional protection of free speech was coextensive with the federal first amendment protection. Since the twenty-first amendment only applied to federal constitutional protections, the "added presumption in favor of the validity of the state regulation" conferred by the twenty-first amendment, California v. LaRue, 409 U.S. 109, 118, 93 S.Ct. 390, 397, 34 L.Ed.2d 342 (1972), had no diminishing effect on the state speech protection. The New York court concluded that, since it had already held in its original decision that the first amendment protected nude barroom dancing, Bellanca v. New York State Liquor Authority, 50 N.Y.2d 524, 407 N.E.2d 460, 429 N.Y.S.2d 616 (1980), and the United States Supreme Court held only that the first amendment was diminished by the twenty-first amendment, that the state speech protection, coextensive with the first amendment and undiminished by the twenty-first, required invalidation of the statute.
We disagree with the New York court. Assuming that Florida's constitutional protection of nude barroom dancing is coextensive with the federal protections (and we are not inclined to find a greater state protection in this instance[3]), a municipality's *204 inherent police power, exercised for the public health and welfare, may outweigh the minimal speech protection at stake here. "The regulation of activity which has demonstrated a capacity to induce breaches of the peace is a traditional and legitimate subject for the exercise of a municipality's police power." Grand Faloon Tavern, Inc. v. Wicker, 670 F.2d 943, 949 (11th Cir.), cert. denied, 459 U.S. 859, 103 S.Ct. 132, 74 L.Ed.2d 113 (1982). See also Board of County Commissioners of Lee County v. Dexterhouse, 348 So.2d 916 (Fla. 2d DCA 1977), aff'd sub nom., Martin v. Board of County Commissioners of Lee County v. Dexterhouse, 348 So.2d 916 (Fla. 2d DCA 1977), aff'd sub nom., Martin v. Board of County Commissioners of Lee County, 364 So.2d 449 (Fla. 1978), appeal dismissed, 441 U.S. 918, 99 S.Ct. 2024, 60 L.Ed.2d 392 (1979). While the Dexterhouse court found, contrary to our discussion above, that nude dancing contains no communicative element, we find that the minimal speech protection afforded nude barroom dancing does not alter the outcome.
The record in this case is replete with the legislative findings of the city commission and supporting reports and documents provided by the police, indicating that nude dancing in Daytona Beach contributes to criminal activities. While the link between barroom nudity and unrelated crime may be tenuous, the record here supports the conclusion that topless bars can and do serve as a center for solicitation for prostitution, by the dancers and by "working women" who find bar customers amenable to business propositions. Performances may also lead to criminal acts of lewdness by dancers and by customers whose inhibitions have been lowered by the combination of alcohol and nudity. While some may question the wisdom of regulating crime such as this, which said detractors might term victimless, the decision lies with the legislative body, not the courts.
We therefore find that there is sufficient evidence to support the incidental burden on speech imposed by this valid exercise of the municipality's police power. Grand Faloon; Dexterhouse.
One may question our reliance on both the twenty-first amendment power and the police power to support our decision. We find it necessary to address both sources of power because the United States Supreme Court has not addressed the question of whether the police power alone is adequate to outweigh the federal first amendment interests at stake in a case such as this. While we believe that the police power is enough, the added weight of the twenty-first amendment comports with the Bellanca decision of the Supreme Court.
It should not be forgotten that the foundation of the twenty-first amendment power is the state's inherent police power to ban alcohol sales. When the states retrieved their power to ban in repealing the eighteenth amendment, they took more than they had given. Section 2 of the twenty-first amendment provides that "[t]he transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited." This section superseded traditional commerce clause limitations on interstate commerce, permitted some classifications otherwise prohibited by the fourteenth amendment, and modified the balance between the exercise of the police power to ban and other provisions of the federal Constitution. California v. LaRue, 409 U.S. 109, 114-15, 93 S.Ct. 390, 395, 34 L.Ed.2d 342 (1972). *205 The Bellanca Court, exercising judicial restraint, went no further than needed in finding a provision of the Constitution which outweighed the incidental first amendment interests involved in nude barroom dancing. We therefore will not attempt to second-guess the Supreme Court on the question of whether the police power alone is sufficient to outweigh federal constitutional interests in this context. We think it is, and so conclude regarding the equivalent state constitutional protection, but rely on the proven twenty-first amendment rationale for the federal question.

DISPARATE SENTENCE
Moore was fined $500. Del Percio and others charged under the ordinance pleaded nolo contendere and received no fines or penalties. Moore claims her punishment is based upon her exercise of her right to trial. In sentencing Ms. Moore, the trial judge stated:
In this particular instance we have  rather I have before me the question of an individual who not only previously maintained that this is an unconstitutional ordinance, but, that in spite of that argument, nevertheless she is innocent of violating the ordinance.
After hearing the testimony, I believe otherwise. I believe that she in fact was maintaining the premises in the absence of the owner at the time and that had sufficient authority over the premises to come within the purview of the statute.
And, her testimony was inconsistent with the [charging] officer's and I must view both individuals and their demeanor in deciding which one's being truthful and which is not, and, that I have taken all these things into account and I believe that the punishment that I am imposing  I am finding her guilty and I am adjudicating her guilty; as I indicated, I am fining her $500. I will waive court costs in this particular instance.
"The law is clear that any judicially imposed penalty which needlessly discourages assertion of the Fifth Amendment right not to plead guilty and deters the exercise of the Sixth Amendment right to demand a jury trial is patently unconstitutional. United States v. Jackson, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968)." Gillman v. State, 373 So.2d 935, 938 (Fla. 2d DCA 1979), quashed on other grounds, 390 So.2d 62 (Fla. 1980). Disparate sentences between those of equal culpability, for instance when one defendant plea bargains for a lesser punishment while the other goes to trial, are not per se indicative that the harsher sentence is an impermissible punishment for exercising the right to trial. See, e.g., Weathington v. State, 262 So.2d 724 (Fla. 3d DCA), cert. denied, 267 So.2d 330 (Fla. 1972), cert. denied, 411 U.S. 933, 93 S.Ct. 1905, 36 L.Ed.2d 393 (1973), pet. for writ of habeas corpus denied sub nom., Weathington v. Wainwright, 486 F. Supp. 934 (S.D.Fla. 1979), aff'd, 618 F.2d 1183 (5th Cir.1980). However, the defendant's exercise of the right to trial cannot be a factor in the sentencing decision. In the instant case, the trial judge's reasoning demonstrates that the exercise of the right to trial was a factor. There is nothing improper in a defendant challenging both the constitutionality of the law being enforced and his or her guilt based on the facts of the case. Here, Moore raised a valid question of whether her status as a fill-in manager, a position she assumed apparently as a gratuitous favor to the owner, subjected her to liability. The facts brought out in the brief trial showed she had sufficient authority to come within the scope of the ordinance. While the judge's discussion suggests he may also have imposed the sentence because he believed Moore lied during the trial, the proper method of imposing punishment for perjury would be through a separate prosecution. Conflicting evidence inheres in most trials, and to allow imposition of a harsher sentence merely because the trial judge believes the evidence supporting his finding of guilt, would create a catch-22  the defendant may not be punished for his exercise of the right to trial but may be punished for his lack of candor during the trial. Compare Gallucci v. State, 371 So.2d 148 (Fla. 4th DCA 1979), cert. denied, 383 So.2d 1194 *206 (Fla. 1980), where the district court implied that a harsher sentence would be proper in response to a belligerent defendant whose intransigent insistence on his innocence after a verdict of guilt and demand to be placed on probation indicated a lack of rehabilitation. Despite the justification, the district court ordered a new sentencing hearing based on the trial judge's statement that he was denying probation because "it is not my intention to try a case and then have the defendant come in and expect to be placed on probation, unless it is very, very odd and weird circumstances. You can call it punishment for going to trial, if you want to. I don't look at it that way." Id. at 150 (emphasis in original).
In cases such as Gillman and Gallucci, the appellate court has remanded the case for a new sentencing hearing wherein the impermissible consideration of the exercise of the right to trial is removed. In this case, nothing other than the trial distinguishes Ms. Moore from the others convicted under the ordinance, and we therefore find as a matter of law that she may not be sentenced any more harshly than they.

CONCLUSION
We would recapitulate that "[a]lthough some may quarrel with the wisdom of such legislation and may consider topless dancing a harmless diversion, the twenty-first amendment makes that a policy judgment for the" legislative body imbued with the power of the twenty-first amendment, "not the courts." Bellanca, 452 U.S. at 718, 101 S.Ct. at 2601.
Accordingly, the decision of the district court is quashed and the case is remanded for action in accordance with this opinion.
It is so ordered.
ALDERMAN, McDONALD and SHAW, JJ., concur.
OVERTON, J., concurs in part and dissents in part with an opinion.
BOYD, C.J., dissents with an opinion, in which ADKINS, J., concurs.
OVERTON, Justice, concurring in part, dissenting in part.
I fully agree that the ordinance, if written as it is now interpreted by the majority, would be constitutional. I find, however, that the ordinance, as written, was clearly intended to have a distinctively different and much broader application as is illustrated by how it was enforced and construed by city officials before both trial and appellate courts. The vagueness and broadness of the application of the ordinance is forcefully illustrated by the various interpretations given the ordinance by trial courts and the district court of appeal. It is clearly appropriate for courts to restrictively construe an ordinance to make it constitutional, but, in my view, it is quite a different matter to rewrite the ordinance by judicial fiat and by that action to change the known intent of the legislative body. I find it is the legislative responsibility of the city council to rewrite and enact a proper ordinance in this circumstance.
BOYD, Chief Justice, dissenting.
I respectfully dissent for the following reasons.
The ordinance is unconstitutionally ambiguous. I find no rational basis to justify the enactment or enforcement of the ordinance. The ordinance fails to meet current constitutional standards as defined by the federal and state courts relating to self-expression and personal conduct.
ADKINS, J., concurs.
NOTES
[1] In support of this judicial obligation, Judge Sharp cited to Erznoznik v. City of Jacksonville, 422 U.S. 205, 95 S.Ct. 2268, 45 L.Ed.2d 125 (1975); State v. Cotney, 104 So.2d 346 (Fla. 1958); Foley v. State, 50 So.2d 179 (Fla. 1951).
[2] The statute provided: "No retail license for on premises consumption ... shall suffer or permit any female to appear on licensed premises in such manner or attire as to expose to view any portion of the breast below the top of the areola, or any simulation thereof." N.Y. Alco. Bev. Cont. Law § 106.6.a. (McKinney Supp. 1980-1981).
[3] Indeed, the dissenters to the New York decision on remand in Bellanca II objected to the majority's decision in part because they did not agree "with the development of a separate [state constitutional] jurisprudence relative to the right of freedom of speech, in the absence of a legally compelling reason for doing so." Bellanca v. New York State Liquor Authority, 54 N.Y.2d at 238, 429 N.E.2d at 770, 445 N.Y.S. at 92 (Gabrielli, J., dissenting). The dissenters felt the twenty-first amendment, while not modifying the state constitution, grants the states broad authority sufficient to outweigh state free speech protections. We conclude that the twenty-first amendment is incapable of granting the states any greater police power than they originally had, as against state constitutional protections, but that the amendment did intrude into other areas of the federal Constitution, as we discuss infra.