**Richard NASH, Petitioner,**

v.

**Philip S. CARCHMAN, Prosecutor of Mercer County, State of New Jersey, Respondent.**

**Civ. A. No. 81–401.**

United States District Court, D. New Jersey.

March 7, 1983.

Joseph H. Rodriguez, Public Defender by John Burke and Mary Ellen Shiever, Asst. Deputy Public Defenders, East Orange, N.J., for petitioner.

Philip S. Carchman, Prosecutor of Mercer County by James A. Waldron, Jr., Asst. Prosecutor of Mercer County, Trenton, N.J., for respondent.

## OPINION

DEBEVOISE, District Judge.

Petitioner Richard Nash seeks issuance of a habeas corpus writ pursuant to 28 U.S.C. § 2254. He is serving a five to ten year sentence in the State Correctional Institution at Dallas, Pennsylvania and attacks the

legality of a detainer filed against him by the State of New Jersey.

■ Petitioner Nash bases his argument upon the New Jersey Interstate Agreement on Detainers, N.J.S.A. 2A:159A–1 *et seq.* Under this Agreement, a prisoner may demand the speedy disposition of charges pending against him in another jurisdiction, and a member State may obtain for trial a prisoner incarcerated in another member State. *See United States v. Mauro,* 436 U.S. 340, 343, 98 S.Ct. 1834, 1839, 56 L.Ed.2d 329 (1978). Under Article III of the Agreement, if a trial is not commenced within 180 days of an inmate's proper request, then a court in the jurisdiction where the outstanding charge is pending shall enter an order dismissing the criminal charges with prejudice. Petitioner claims that the State of New Jersey failed to dispose of the detainer lodged against him within the required 180 days and therefore maintains that the state court should have dismissed both the detainer and its underlying charge and that this court should issue a writ of habeas corpus.

In a June 24, 1981 opinion, I determined that petitioner had not exhausted his state remedies, and on August 3, 1981, I administratively terminated this action without prejudice to allow the petitioner to pursue his claim in the New Jersey courts.

On August 24 and 25, 1981, a hearing was held before the Honorable Richard Barlow, Jr. in the Superior Court of New Jersey. The trial judge determined that the petitioner's correspondence from April to November 1979 (the details of which are set forth below) failed to satisfy the notice requirements of N.J.S.A. 2A:159A–3 necessary to trigger the 180 day period in which a state must commence a hearing on an untried complaint.

The court concluded that the State of New Jersey was not untimely in addressing petitioner's alleged probation violation and held that the detainer against petitioner was valid. Judge Barlow found petitioner guilty of violating his probation on the basis of his Pennsylvania convictions and resentenced petitioner to serve two consecutive 18 month terms with credit for the 249 days petitioner served in 1976 and 1977.

On June 22, 1982, the Appellate Division of the Superior Court of New Jersey affirmed the trial court's judgment, and on November 12, 1982, the Supreme Court of New Jersey denied both certification and petitioner's direct appeal.

The habeas corpus petition is now before this court for a determination on the merits.

Initially, I note that both Pennsylvania and New Jersey adopted the Interstate Agreement on Detainers, 42 Pa.C.S.A. §§ 9101, *et seq.;* N.J.S.A. 2A:159A–1, *et seq.,* and that the Supreme Court in *Cuyler v. Adams,* 449 U.S. 433, 101 S.Ct. 703, 66 L.Ed.2d 641 (1981), held that the Agreement is a congressionally sanctioned interstate compact, the interpretation of which presents a question of federal law. *Id.* at 442, 101 S.Ct. at 709. Additionally, the Third Circuit has found that an alleged violation of the Interstate Agreement on Detainers is an issue cognizable in federal habeas corpus proceedings. *Johnson v. Williams,* 666 F.2d 842, 844, n. 1 (3d Cir.1981); *United States v. Williams,* 615 F.2d 585, 590 (3d Cir.1980).

Before I can turn to the merits of petitioner's claim, I must address the state's argument that Article III of the Agreement, N.J.S.A. 2A:159A–3, is inapplicable to a charge of parole or probation violation. Neither the Third Circuit Court of Appeals, the district courts of this circuit, nor the New Jersey courts have ever addressed this issue.

Article III states in relevant part:

(a) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party State, and whenever during the continuance of the term of imprisonment there is pending in any other party State an *untried indictment, information, or complaint* on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within 180 days....

N.J.S.A. 2A:159A–3(a) (emphasis added).

Although an alleged probation violation could be construed as an "untried com-

plaint", the Interstate Agreement on Detainers does not so specify on its face.

■ However, Article I, the section which sets forth the Agreement's purpose, employs broad language which seems to encompass a probation violation charge. This Article provides that:

> charges outstanding against a prisoner, [as well as] detainers based on untried indictments, informations, or complaints . . . produce uncertainties which obstruct programs of prisoner treatment and rehabilitation . . . .

(emphasis added). N.J.S.A. 2A:159A–1. The stated purpose of the Agreement is to dispose of outstanding charges, indictments, informations, or complaints expeditiously to protect the prisoner from the adverse consequences of detainers. N.J.S.A. 2A:159A–1; *Cuyler v. Adams,* 449 U.S. 433, 448–449, 101 S.Ct. 703, 711–12, 66 L.Ed.2d 641 (1981); *United States v. Mauro,* 436 U.S. 340, 360, 98 S.Ct. 1834, 1847, 56 L.Ed.2d 329 (1978). Article IX of the Interstate Agreement on Detainers directs that the Agreement should be liberally construed to effectuate these purposes. N.J.S.A. 2A:159A–9.

It appears that the stated policy behind the Agreement would apply to petitioner's outstanding detainer. A detainer based on an alleged probation violation will, of course, have the same adverse effects on an inmate as a detainer based on an untried indictment or information. The punitive consequences of detainers are generally recognized to include the following:

> the inmate is (1) deprived of an opportunity to obtain a sentence to run concurrently with the sentence being served at the time the detainer is filed; (2) classified as a maximum or close custody risk; (3) ineligible for initial assignments to less than maximum security prisons (i.e., honor farms or forestry camp work); (4) ineligible for trustee status; (5) not allowed to live in preferred living quarters such as dormitories; (6) ineligible for study-release programs or work-release programs; (7) ineligible to be transferred to preferred medium or minimum custody institutions within the correctional system, which includes the removal of any possibility of transfer to an institution more appropriate for youthful offenders; (8) not entitled to preferred prison jobs which carry higher wages and entitle them to additional good time credits against their sentence; (9) inhibited by the denial of possibility of parole or any commutation of his sentence; (10) caused anxiety and thus hindered in the overall rehabilitation process since he cannot take maximum advantage of his institutional opportunities.

*Cooper v. Lockhart,* 489 F.2d 308, 314 (8th Cir.1973). In light of the above consequences, a prisoner with any kind of outstanding detainer will be anxious to resolve the underlying charges.

The legislative history behind the Interstate Agreement on Detainers provides further support for the contention that a detainer based upon an alleged probation violation constitutes a detainer based upon an "untried indictment, information, or complaint" within the meaning of the statute.

The Interstate Agreement on Detainers, codified in New Jersey at N.J.S.A. 2A:159A–1, *et seq.,* is a compact among 48 states, the District of Columbia, and the United States. The Council of State Governments initially drafted the Agreement in 1956. The draft Agreement was reviewed and approved in April 1956 by a conference jointly sponsored by the American Correctional Association, the Council of State Governments, the National Probation and Parole Association, and the New York Joint Legislative Committee on Interstate Cooperation. Following this conference's endorsement of the Agreement, the Council of State Governments included the proposal in its suggested State Legislation Program for 1957.

The New Jersey legislative enactment of the Interstate Agreement on Detainers in 1958 contained a text identical to the 1957 proposed legislation. A sponsor's statement is the only legislative history that exists for the New Jersey Agreement. This statement provides:

The problem of expedient disposition of detainers filed against inmates of penal or correctional institutions in this State has long been recognized.... This bill ... would do much to facilitate the administration of our correctional institutions in handling cases of inmates presently restricted from parole, minimum security, work assignments, and other rehabilitative procedure.

Assembly Bill 64 (1958), sponsored by William E. Ozzard and Leonard D. Ronco. Although the legislative history recorded in New Jersey is sparse, a more comprehensive statement of legislative intent is found in the comments on the proposed legislation made by the Council of State Governments in 1956 and circulated to all the adopting States. The Supreme Court in both *Cuyler v. Adams,* 449 U.S. 433, 447, 101 S.Ct. 703, 711, 66 L.Ed.2d 641 (1981) and *United States v. Mauro,* 436 U.S. 340, 359, 98 S.Ct. 1834, 1846, 56 L.Ed.2d 329 (1978), examined the recommendations of the Council of State Governments in interpreting the Interstate Agreement on Detainers, and I find it instructive to do so in this case.

In recommending the adoption of the Interstate Agreement on Detainers, the Council of State Governments outlined some of the problems caused by detainers that the Agreement was designed to address. The Council states that a "prison administrator is thwarted in his efforts towards rehabilitation [since an] inmate who has a detainer against him is filled with anxiety and apprehension and frequently does not respond to a training program." Council of State Governments, Suggested State Legislation for 1957 at 74 (1956). In addition, the Council noted that a prisoner was often deprived of the ability to take advantage of many of the prison's programs aimed at rehabilitation merely because a detainer was lodged against him. *Supra,* at 76. Furthermore, the Council stated that a detainer's existence presented problems in sentencing. A judge may be reluctant to give a long sentence if a detainer may cause a defendant to lose the privilege of parole or may result in a defendant serving subsequent sentences. *Supra,* at 74.

Significantly, the Council further indicated the type of detainer to which the Agreement was meant to apply. The Council stated:

Such detainers may be placed by various authorities under varying conditions, for example, when an escaped prisoner or *a parolee commits a new crime and is imprisoned in another state.*

*Supra,* at 74 (emphasis added).

Thus, the Council's explanatory comments address the petitioner's very situation.

■ Examining the language of the Agreement, its broad purposes, and its legislative history, I find that a probation violation charge is an "untried indictment, information, or complaint" within Article III of the Interstate Agreement on Detainers. N.J.S.A. 2A:159A–3. Thus, the Agreement does apply to petitioner's detainer.

The only federal case which reaches a contrary holding is *Sable v. Ohio,* 439 F.Supp. 905, 906 (W.D.Okla.1977). The court in *Sable* asserts in a conclusory fashion that the basis of the detainer at issue was an alleged violation of parole which is not an "untried indictment, information, or complaint." No examination of the Agreement's language, purpose, or legislative history was made, and I find this case unpersuasive.

Although the State cites *United States v. Reed,* 620 F.2d 709 (9th Cir.), *cert. denied,* 449 U.S. 880, 101 S.Ct. 229, 66 L.Ed.2d 104 (1980), as standing for the proposition that Article III of the Interstate Agreement on Detainers does not apply to alleged parole violations, the Court in *Reed* analyzed Article IV and not Article III of the Agreement and held that the petitioner who was in custody awaiting a parole revocation hearing was not serving a "term of imprisonment" as required by Article IV of the Agreement. *Id.* at 711. The question of whether a detainer based on an alleged probation violation fell within the Agreement was simply not before the court in *Reed.*

It appears that a majority of state cases conclude that Article III of the Agreement

does not extend to detainers based on probation or parole violation charges. *People ex rel. Capalongo v. Howard,* 453 N.Y.S.2d 45, 47, 87 A.D.2d 242, 244 (App.Div.1982); *Maggard v. Wainwright,* 411 So.2d 200, 242 (Fla. 1st D.C.A. 1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 309, 74 L.Ed.2d 289 (1983); *People v. Jackson,* 626 P.2d 723, 723 (Colo. App.Div. III 1981); *State v. Knowles,* 275 S.C. 312, 313, 270 S.E.2d 133, 134 (1980); *Blackwell v. State of Tennessee,* 546 S.W.2d 828, 829 (Tenn.Cr.App.1976); *Suggs v. Hopper,* 234 Ga. 242, 243, 215 S.E.2d 246, 247, 248 (1975); *Buchanan v. Michigan Dept. of Corr.,* 50 Mich.App. 1, 2, 212 N.W.2d 745, 746 (1973); *contra, Gaddy v. Turner,* 376 So.2d 1225, 1228 (Fla. 2nd D.C.A. 1979).

None of the above cases, with the exception of *Gaddy v. Turner, supra,* examined the Agreement's legislative history. The only state case that did analyze the legislative intent behind the Interstate Agreement on Detainers reviewed the Council of State Government's comments and concluded, as I have, that detainers based on probation violation fall within the mandate of the Agreement. *Gaddy v. Turner, supra,* at 1228.

The next question is whether the State of New Jersey violated petitioner's rights under the Agreement.

The New Jersey Interstate Agreement on Detainers, N.J.S.A. 2A:159A–1, *et seq.,* gives a prisoner serving a sentence in one state and against whom a detainer is lodged by another state the right to request final disposition of the matter on account of which the detainer is lodged. Article III(a) of the Agreement provides that the prisoner:

> shall be brought to trial within 180 days after he shall cause to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint.

N.J.S.A. 2A:159A–3(a).

Under Article III(b), a prisoner's written notice and request for final disposition referred to in paragraph (a)

> shall be given or sent by the prisoner to the warden, commissioner of corrections or other official having custody of him, who shall promptly forward it together with the certificate to the appropriate prosecuting official and court by registered or certified mail, return receipt requested.

N.J.S.A. 2A:159A–3(b).

Sanctions under the Agreement are provided for in Article V(c) which states:

> in the event that an action on the indictment, information, or complaint on the basis of which the detainer has been lodged is not brought to trial within the period provided in Article III ... the appropriate court of the jurisdiction where the indictment, information or complaint has been pending shall enter an order dismissing the same with prejudice, and any detainer based thereon shall cease to be of any force or effect.

N.J.S.A. 2A:159A–5(c).

It must be determined whether the communications between petitioner and New Jersey authorities complied with these statutory provisions and, if so, as of what date the 180 day period began to run.

The facts are not disputed by the parties and are as follows:

On June 21, 1976, petitioner pleaded guilty to two counts of a New Jersey indictment. Count One charged the petitioner with breaking and entering with intent to rape, and Count Two charged him with assault with intent to rape.

On October 29, 1976, the New Jersey court sentenced petitioner to eighteen months at the Mercer County Correction Center on each Count, the sentences to run consecutively. The court suspended twenty-four months of the sentence, and petitioner served a twelve-month term. Upon release from the Correction Center, petitioner was placed on probation. While on probation, he was charged, in Pennsylvania, with burglary, involuntary deviant sexual intercourse, and loitering.

Petitioner was arrested and imprisoned pending his trial. On June 21, 1978, New Jersey filed a detainer against petitioner, charging him with violation of probation. Petitioner was tried and convicted on the Pennsylvania charges on March 14, 1979, and sentenced on July 13, 1979.

■ On April 13, 1979, petitioner sent his first letter to the Mercer County Prosecutor's Office requesting that the office advise him "what [he] should do in reference to the Probation Violation Detainer." Mr. Nash's letter also stated that "[w]hatever [the Prosecutor's Office] can do with respect to the Probation Detainer, would be greatly appreciated." Although petitioner made no explicit reference to the Interstate Agreement on Detainers, this letter did provide the Prosecutor's Office with notice that petitioner had an outstanding New Jersey detainer that he wanted resolved. However, at the time of the April 13, 1979 letter, Mr. Nash had not received a sentence for his Pennsylvania convictions and, therefore, was not serving a term of imprisonment, which is an essential prerequisite to trigger the 180 day time limit of the Agreement. N.J.S.A. 2A:159A–3(a).

On May 16, 1979, the Mercer County Prosecutor's Office responded to petitioner's letter. It did not bring the Interstate Agreement on Detainer's to petitioner's attention. Nor did the Office inform petitioner that his request for a hearing on the detainer had to be made either to the warden or to the prosecutor and the court. The Mercer County Prosecutor's May 16th letter incorrectly informed petitioner that he would have to contact his probation officer for any resolution of his detainer. Relying upon this advice, petitioner wrote to the Mercer County Probation Office on May 17, 1979 and requested its assistance in obtaining action on the detainer charges.

By reply letter dated May 23, 1979, Probation Officer Robert Hughes informed petitioner that he spoke to Judge Jerome Moore of the Superior Court of New Jersey who stated that no action could be taken on the detainer until after the petitioner was sentenced on July 5, 1979. This letter demonstrated that by May 23, 1979, the Superior Court of New Jersey had notice of petitioner's outstanding detainer.

■ Unfortunately, Judge Moore provided the Probation Office with erroneous information. Although the 180 day period cannot be triggered earlier than a defendant's sentencing date, a defendant can certainly provide notice to the appropriate authorities before that time. *United States v. Hutchins*, 489 F.Supp. 710, 715 (N.D.Ind. 1980). The defendant's demand for speedy disposition of the charges would be effective as of his sentencing. *Id.* at 715. However, Judge Moore informed Probation Officer Hughes that nothing can be done until after petitioner's sentencing, and Mr. Hughes passed on this information to petitioner, suggesting that he communicate with the Mercer County Probation Office after his sentencing date.

Petitioner followed this incorrect advice and wrote the Mercer County Probation Office on July 20, 1979, one week after his sentencing, to renew his request that action be taken on the detainer as soon as possible. Probation Officer Judith Giordano's reply, dated August 3, 1979, advised petitioner that she communicated with the Public Defender's Office to arrange representation for Mr. Nash and that a hearing would be held concerning the probation violation charge as soon as an attorney was appointed.

Petitioner testified before Judge Barlow in the New Jersey Superior Court that he first received a detainer procedure notice from the Pennsylvania Correctional Institution on or about August 17, 1979.* This notice stated that the Records Officer would provide the necessary forms to a prisoner if he wished to have his untried indictments resolved and that forms would be forwarded to the District Attorney and

---

* The New Jersey Superior Court found that the detainer notice was supplied to petitioner in July 1979 when he first arrived at the Pennsyl- vania State Correctional Institution at Graterford. (Transcript II, August 25, 1981, at 67).

the court of the county having jurisdiction. (Transcript II, August 25, 1981, at 12).

Petitioner explained in his testimony before Judge Barlow that he did not seek to complete the prison forms since he already received an answer from his probation officer that he would receive a hearing as soon as a public defender was assigned to him. (Transcript II, August 25, 1981, at 13). In Mr. Nash's words, he "felt that that was a promise and there was ... nothing else for [him] to do because a hearing would be held very shortly after that." On the basis of his correspondence with the Prosecutor's Office, the Superior Court of New Jersey, and the Probation Office, petitioner justifiably believed that he made an effective demand for final disposition of his pending charges and in fact the proper authorities in New Jersey had been informed of his demand.

When no hearing was scheduled, petitioner wrote two letters on November 5, 1979 once again requesting disposition of his New Jersey detainer. In his letter to Chief Probation Officer Holloway, petitioner explicitly requested final disposition of the probation violation charge on the basis of the Interstate Agreement on Detainers Act and stated that the Pennsylvania Bureau of Corrections had been asked to attach a certificate indicating the conditions of his sentence. A copy of this letter was mailed to Judge Schoch, the Assignment Judge of the Superior Court of New Jersey, Mercer County. A separate letter was also sent to Judge Schoch which expressed petitioner's frustration in attempting to dispose of his detainer and requested assistance from the Judge on this matter.

Judge Schoch transmitted petitioner's November 5, 1979 letter to the Mercer County Prosecutor with an attached note dated November 13, 1979 suggesting that petitioner was invoking the terms of the Interstate Agreement on Detainers.

On December 6, 1979, petitioner executed Form II under the Interstate Agreement on Detainers formally requesting transfer to Mercer County to resolve the probation violation charge.

This form was addressed to the Prosecutor of Mercer County and constituted a formal notice of petitioner's place of imprisonment and request for disposition of indictments, informations, or complaints. On the same day, Pennsylvania authorities executed Form IV used under the Agreement on Detainers. This form likewise was addressed to the Prosecutor of Mercer County. It constituted an offer to deliver temporary custody of the petitioner to the Prosecutor and set forth pertinent information about petitioner's custody status in Pennsylvania.

On December 14, 1979, the Mercer County Prosecutor's Office responded to petitioner's request by sending Form VI of the Interstate Agreement on Detainers to the State Correctional Institution at Dallas. The form authorized two agents of the Mercer County Sheriff's Office to take custody of petitioner on December 20, 1979. The Sheriff's deputies went to the Correctional Institution but were informed that on December 11, 1979, petitioner had been moved temporarily to a penal institution in Graterford, Pennsylvania.

On or about February 26, 1980, petitioner was returned to the Dallas institution, and on February 28, the Mercer County Prosecutor's Office sent a new Form VI to the State Correctional facility at Dallas. The form designated March 10, 1980 as the date when petitioner would be taken into custody by the New Jersey officers.

Petitioner, however, refused to sign additional papers to effectuate his transfer to New Jersey. Instead, petitioner filed a petition for a writ of habeas corpus on March 6, 1980 in the United States District Court for the Middle District of Pennsylvania, seeking dismissal of the detainer. The State Correctional facility officials notified the Mercer County Prosecutor's Office of this development and, consequently, no agents were sent to bring petitioner to Mercer County.

On November 18, 1980, petitioner filed a petition for habeas corpus in the New Jersey Superior Court, seeking dismissal of the detainer and asked the District Court in

Pennsylvania to stay proceedings in the federal habeas corpus action until the New Jersey court had acted.

On December 9, 1980, petitioner filed an amended petition for habeas corpus with the District Court in Pennsylvania stating that his New Jersey state court petition for a writ of habeas corpus petition had been denied.

On February 3, 1981, the District Court for the Middle District of Pennsylvania transferred the case to this district pursuant to 28 U.S.C. § 1406. After consideration by United States Magistrate Devine and then by me, I ruled in an unpublished opinion that petitioner had not exhausted his state remedies and I stayed the action, as mentioned above, until completion of proceedings in the state courts. Only the most indefatigable litigant would have pursued his remedy with the persistence demonstrated by petitioner.

Petitioner argues that the notice provisions of Article III(a) were satisfied by his April 13, 1979 letter to the Mercer County Prosecutor taken in conjunction with the Mercer County Probation Office's May 23, 1979 reply letter which demonstrated that a New Jersey Superior Court Judge had been notified of petitioner's outstanding detainer and request for hearing. Petitioner submits that the 180 day statutory period commenced on July 13, 1979, the date of his sentencing, since he was then serving a term of imprisonment as required by Article III of the Agreement. Petitioner requests that he be relieved from the effect of his detainer and of the conviction on the underlying probation violation charge since the State failed to schedule a hearing by January 9, 1980, 180 days after his sentencing date.

The State argues that the 180 day period commenced December 6, 1979 when the petitioner executed Form II under the Interstate Agreement on Detainers formally requesting transfer to Mercer County to resolve the probation violation charge. The State submits that the 180 day period was tolled 91 days later, since petitioner refused to sign transfer papers and filed a habeas corpus petition seeking dismissal of his detainer on that date. Therefore, the State maintains that no violation of petitioner's rights under the Agreement occurred.

■ Ordinarily, a prisoner must comply with all the formal prerequisites of Article III to trigger the Agreement's 180 day period. The process is begun when the official having custody of a prisoner "promptly informs" the prisoner of any detainers lodged against him and of his right to request final disposition of the outstanding charges. N.J.S.A. 2A:159A–3(c). A prisoner must then notify his custodian that he wishes final disposition of the charge, and the custodian must notify all appropriate prosecuting officers and courts in the jurisdiction in which the prisoner is initiating proceedings of the prisoner's request for final disposition. N.J.S.A. 2A:159–3(d). The statute further provides that any notification will be accompanied with a certificate from the petitioner's custodian stating the prisoner's term of commitment, time already served on the sentence, amount of good time earned, and parole eligibility. N.J.S.A. 2A:159A–3(a). With the receipt of this formal request, the charging state is put on notice that it has 180 days to bring the defendant to trial on the untried indictment, information, or complaint. N.J.S.A. 2A:159A–3(a).

However, in the unusual circumstances of this case, petitioner was misled and given inaccurate information regarding the action he should take with respect to his outstanding detainer by the Mercer County Prosecutor's Office, the Superior Court of New Jersey in Mercer County, and the Mercer County Probation Office, which was acting upon instructions of the court. Petitioner relied on their advice and followed their instructions carefully. The Pennsylvania prison authorities did not notify the petitioner of his rights under the Interstate Agreement on Detainer until July or August 1979, after the petitioner had already corresponded with the Mercer County Prosecutor's Office and the Mercer County Probation Office and followed, to his detriment, the advice they gave.

The defendant State of New Jersey cites several cases for the proposition that the 180 day period commences only upon a prisoner's technical compliance with the Agreement's requirements. *State v. Ternaku,* 156 N.J.Super. 30, 34, 383 A.2d 437 (App.Div.), *cert. denied,* 77 N.J. 479, 391 A.2d 494 (1978); *Gray v. Benson,* 443 F.Supp. 1284 (D.Kan.1978); *People v. Primmer,* 59 App. Div.2d 221, 399 N.Y.S.2d 478 (App.Div.), *aff'd,* 46 N.Y.2d 1048, 416 N.Y.S.2d 548, 389 N.E.2d 1070 (1977); *People v. Daily,* 46 Ill.App.3d 195, 4 Ill.Dec. 756, 360 N.E.2d 1131 (Ill.App.1972).

However, none of these cases involved a prisoner who received inaccurate or misleading information from duly constituted state authorities regarding the disposition of outstanding detainers. In fact, in *People v. Daily, supra,* the court stated, in dictum, that courts require only a good faith, diligent effort by the prisoner to invoke the Interstate Agreement on Detainers when his action is the result of mistake or misguidance by the officials involved. *Id.* 4 Ill. Dec. at 762, 360 N.E.2d at 1137. Likewise, the court in *Pittman v. State,* 301 A.2d 509 (Del.Sup.Ct.1973), noted that the "burden of compliance with the procedural requirements of [the Agreement] rests upon the party states and their agents; the prisoner, who is to benefit by this statute, is not to be held accountable for official administrative errors which deprive him of that benefit." *Id.* at 514.

Federal courts have also adopted the philosophy that technical compliance is unnecessary if, through no fault of his own, a petitioner fails to meet all the Article III requirements.

In *United States v. Hutchins,* 489 F.Supp. 710 (N.D.Ind.1980), the petitioner, after being advised by a United States Marshal of his rights under the Interstate Agreement on Detainers, made a request for final disposition of his detainer to the Marshal rather than to his custodian as required by Article III(b). The Marshal erroneously notified only the United States Attorney's Office and not the United States District Court of petitioner's request. In addition,

the petitioner made the request for disposition before he was serving a term of imprisonment as required by the Agreement. The court found that the petitioner nevertheless fulfilled his obligations under the Interstate Agreement on Detainers stating that "it would be asking entirely too much to require a prisoner incorrectly notified of his rights by the wrong person at the wrong time, yet seeking to assert his right in the manner expressly provided by that person to know that his actions do not fit the letter of the statute under which he asserts his rights." *Id.* at 716. The court stated that where a prisoner is "led to believe that he has made an effective demand for final disposition of pending charges," the fact that the request was made prior to sentencing does not negate the effect of the notice, but only means that the 180 day period commences once the prisoner is sentenced. *Id.* at 715. To hold otherwise, the court asserted, would undercut the purposes of the Agreement and the mandate that a court liberally construe the Agreement so as to effectuate its purposes. *Id.* at 714.

In *Schofs v. Warden,* 509 F.Supp. 78 (E.D. Ky.1981), the court held that since the petitioner failed to receive the appropriate forms, through no fault of his own, his letters sent directly to the clerk and the state attorney's office satisfied the Interstate Agreement on Detainers even though the literal terms of the Act were not met. *Id.* at 82.

Finally, in *Beebe v. Vaughn,* 430 F.Supp. 1220 (D.Del.1977), the court held that strict compliance was necessary under the Agreement, noting that they were not examining a case in which a petitioner alleges that the state authorities were responsible for a "procedural default" under the Agreement. *Id.* at 1224.

In the instant case, petitioner should not be penalized for following the instructions he received from the Mercer County Prosecutor's Office, the New Jersey Superior Court and the Mercer County Probation Office.

The facts of this case must be viewed in light of the Agreement's purpose of expedi-

tiously disposing of outstanding detainers and determining an inmate's proper status under all detainers. N.J.S.A. 2A:159A–1. I further note that the Agreement must be construed liberally to effectuate its purpose, N.J.S.A. 2A:159A–9, and that the Supreme Court has found that a primary purpose of the Agreement is to protect prisoners against whom detainers are outstanding. *Cuyler v. Adams,* 449 U.S. 433, 449, 101 S.Ct. 703, 712, 66 L.Ed.2d 641 (1981).

I hold that petitioner gave notice to the Mercer County Prosecutor's Office on April 13, 1979 when he expressed his desire to resolve his outstanding detainer even though the petitioner did not mention the Interstate Agreement on Detainers by name. Petitioner gave notice to the Superior Court of New Jersey by at least May 23, 1979 when it became clear in Probation Officer Hughes' reply letter that Judge Moore of the Superior Court was informed of petitioner's outstanding detainer. However, the 180 day period was not triggered until July 13, 1979, the date of petitioner's sentencing because the petitioner was not serving a term of imprisonment until that date.

Since the State did not fulfill its obligation to hear the underlying charges of petitioner's detainer by January 9, 1980, 180 days after petitioner notified the proper authorities, I find that the State violated petitioner's rights under the Interstate Agreement on Detainers. N.J.S.A. 2A:159A–1, *et seq.* His conviction for violation of probation is a nullity and a writ will issue freeing him from the effect of such conviction.

Petitioner's attorneys are requested to submit an appropriate form of order or writ.