Murray SHACK

v.

WARDEN OF GRATERFORD PRISON
and The Attorney General of the State
of Pennsylvania.

Civ. A. No. 84–2361.

United States District Court,
E.D. Pennsylvania.

Oct. 2, 1984.

Murray Shack, pro se.

Sandra L. Elias, Deputy Dist. Atty., Chief, Law & Appeals Unit, Media, Pa., for District Attorney of Delaware County.

## OPINION

LUONGO, Chief Judge.

Shortly after commencement of his fifteen to twenty year prison term at New Jersey's Rahway State Prison, relator Murray Shack received formal notice that the Commonwealth of Pennsylvania had requested his presence for prosecution on unrelated offenses. Without the benefit of a hearing to determine the validity of Pennsylvania's summons, Shack was then extradited to Pennsylvania where he was tried and convicted of robbery and conspiracy. Now claiming that his right to a pre-transfer hearing under the Interstate Agreement on Detainers (IAD) was violated, relator seeks release from Pennsylvania's custody by writ of habeas corpus. Because I conclude that such a violation, if established, would not entitle Shack to relief under 28 U.S.C. § 2254, I will deny the writ.[1]

1. This is the second § 2254 petition filed by Shack. In *Shack v. Rapone,* CA 79–3453 (E.D. Pa.1979), I denied Shack's petition for failure to exhaust state remedies, and certified that there was no probable cause for appeal. The court of appeals denied a motion to issue a certificate of

## I.

The parties generally agree that the following scenario unfolded in 1979: On May 11, 1979, Murray Shack appeared for sentencing before a New Jersey trial judge who committed Shack to custody at Rahway State Prison for fifteen to twenty years. At sentencing, Shack was informed by the court that a detainer had been lodged against him, requiring his presence at Delaware County, Pennsylvania. On July 11, 1979, a night social worker at Rahway served upon the relator a copy of Delaware County's request for temporary custody pursuant to Article IV of the IAD. Shack was transported to Pennsylvania's Broadmeadows Prison on September 14, 1979, and on November 20, 1979 a jury found Shack guilty of robbery and conspiracy.

The parties dispute whether Shack invoked or waived his right to a pre-transfer hearing before his removal to Broadmeadows Prison. Relator claims that he refused to sign a waiver of extradition form proffered by Rahway's social worker at the time of service of Pennsylvania's IAD request; that he informed the social worker of his desire for a hearing; and that he renewed that request on September 14, 1979 before his transfer to Pennsylvania's custody. A response filed by the District Attorney of Delaware County denies relator's allegations. In support of their position, respondents refer to findings of fact made by a state trial court which rejected Shack's petition for habeas corpus. In relevant portion, the state court found that Shack did not communicate his desire for an extradition hearing to the social worker, and that the social worker neither discussed Shack's right to a hearing, nor "interpret[ed] the manner of his removal from New Jersey to Pennsylvania." For present purposes, I will accept as true Shack's version of the facts.[2]

## II.

Accorded a generous reading under the rule of *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), Shack's *pro se* challenge to his Pennsylvania confinement proceeds on a twofold theory: he argues that deprivation of his right to a pre-transfer hearing, without more, renders his conviction vulnerable to attack under 28 U.S.C. § 2254.[3] He argues further that, because he was transferred to Pennsylvania improperly, he should have been returned to New Jersey for a hearing, but that the very act of returning him to New Jersey would have discharged with prejudice Pennsylvania's criminal action against him under Article IV(e) of the IAD.[4]

Turning first to Shack's argument that deprivation of his right to a pre-transfer hearing provides a basis for § 2254 relief, I discern two potential premises for his position. First, he claims that the improper manner of his transfer to Pennsylvania deprived the receiving state of personal jurisdiction with respect to his subsequent criminal trial. Second, he contends that because his conviction was obtained through

---

probable cause. *Shack v. Rapone,* No. 79–8270 (3d Cir. filed January 3, 1979).

**2.** Notwithstanding relator's filing of a motion for summary judgment, I accept his rendition of the facts because I have determined that if his allegations were true, he would not be entitled to relief. Relator's failure to assert facts which would entitle him to relief is also the basis for my denial of his petition without an evidentiary hearing. Rule 8(a), Rules Governing Section 2254 Cases in the United States District Courts; *Bibby v. Tard,* 741 F.2d 26 (3d Cir.1984).

**3.** In relevant part, 28 U.S.C. § 2254 provides:
(a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

**4.** Article IV(e) of the IAD provides:
If trial is not had on any indictment, information or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment pursuant to Article V(e) hereof, such indictment, information or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.
See 42 Pa.C.S.A. § 9101; N.J.Stat.Ann. § 2A:159A–4.

a violation of the IAD, a federally approved interstate compact, his continuing confinement on that charge is in violation of federal law.

### III.

There is no merit in Shack's assertion that Pennsylvania lacked personal jurisdiction to prosecute him because of New Jersey's failure to conduct a pre-transfer hearing. It has long been established that the use of illegal means of extradition does not impair the receiving state's power to try a criminal defendant in a proceeding which is itself untainted by constitutional error. *Ker v. Illinois,* 119 U.S. 436, 7 S.Ct. 225, 30 L.Ed. 421 (1886). The Supreme Court reaffirmed that principle in *Frisbie v. Collins,* 342 U.S. 519, 72 S.Ct. 509, 96 L.Ed. 541 (1952). There the Court refused habeas relief to a Michigan prisoner who claimed that "while he was living in Chicago, Michigan officers forcibly seized, handcuffed, blackjacked and took him to Michigan." 342 U.S. at 520. Writing for a unanimous Court, Justice Black refused to void the criminal conviction because of the allegedly unlawful extradition:

> This Court has never departed from the rule announced in *Ker v. Illinois,* 119 U.S. 436, 444, 7 S.Ct. 225, 229, 30 L.Ed. 421, that the power of a court to try a person for crime is not impaired by the fact that he had been brought within the court's jurisdiction by reason of a "forcible abduction." No persuasive reasons are now presented to justify overruling this line of cases. They rest on the sound basis that due process of law is satisfied when one present in court is convicted of crime after having been fairly apprized of the charges against him and after a fair trial in accordance with constitutional procedural safeguards. There is nothing in the Constitution that requires a court to permit a guilty person rightfully convicted to escape justice because he was brought to trial against his will.

342 U.S. at 522, 72 S.Ct. at 511 (footnote omitted).

In accord with this reasoning is *United States ex rel. Huntt v. Russell,* 285 F.Supp. 765 (E.D.Pa.1968), *aff'd* 406 F.2d 744 (3d Cir.1969) (per curiam). In *Huntt,* the Court of Appeals for the Third Circuit affirmed the denial of a writ of habeas corpus sought by a prisoner who claimed, *inter alia,* that he was deprived of his right to appointed counsel at an extradition hearing. The district court opinion in *Huntt* relied upon *Frisbie,* and held that "[i]llegal extradition does not afford a basis for relief by way of habeas corpus." 285 F.Supp. at 767. *Accord Myers v. Rhay,* 577 F.2d 504, 510 (9th Cir.), *cert. denied,* 439 U.S. 968, 99 S.Ct. 459, 58 L.Ed.2d 427 (1978).

In short, Supreme Court and Third Circuit precedents establish that illegal extradition does not deprive the receiving sovereign of personal jurisdiction over criminal defendants so transmitted. Shack's claim that Pennsylvania lacked power to conduct his criminal prosecution must therefore be rejected.

### IV.

The second potential premise of Shack's argument that deprivation of a pre-transfer hearing entitles him to § 2254 relief (i.e., that his confinement is in violation of the federally approved IAD) poses a more difficult question. As relator points out, the IAD has been held to be "a congressionally sanctioned interstate compact the interpretation of which presents a question of federal law." *Cuyler v. Adams,* 449 U.S. 433, 442, 101 S.Ct. 703, 708, 66 L.Ed.2d 641 (1981). The IAD has further been interpreted as preserving and incorporating state law procedural protections for individuals sought to be extradited. *Id.,* 443–450, 101 S.Ct. at 709–712. Consistent with this interpretation, the Supreme Court has held that violation of a prisoner's right to a pre-transfer hearing gives rise to a cause of action under the federal civil rights statute, 42 U.S.C. § 1983. *Id.*

The question whether deprivation of a pre-transfer hearing entitles relator to a *writ of habeas corpus,* however, is not

resolved simply by determining whether the relator's transfer comported with federal standards. "[Not] every asserted error of law can be raised on a § 2255 motion." [5] *Davis v. United States,* 417 U.S. 333, 346, 94 S.Ct. 2298, 2305, 41 L.Ed.2d 109 (1974). "[T]he appropriate inquiry [is] whether the claimed error of law was 'a fundamental defect which inherently results in a complete miscarriage of justice,' and whether '[i]t ... present[s] exceptional circumstances where the need for the remedy afforded by the writ of *habeas corpus* is apparent.'" *Id., quoting Hill v. United States,* 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962).

### A.

The Court of Appeals for the Third Circuit has addressed the propriety of habeas relief in the context of various infractions of the IAD. In *United States ex rel. Esola v. Groomes,* 520 F.2d 830 (3d Cir.1975), the court reversed the dismissal of a § 2254 petition filed by a New Jersey prisoner who alleged that his conviction was obtained in violation of Article IV(e) of the IAD. There the prisoner alleged that, while serving a federal sentence at Danbury, Connecticut, he was removed to New Jersey pursuant to a writ of habeas corpus ad prosequendum on four occasions, standing trial only on his fourth transfer. Article IV(e) of the IAD requires dismissal of criminal charges by the receiving state if the prisoner is transferred from the asylum state pursuant to the IAD, but is returned

to the asylum state before prosecution of the charges.[6] The court distinguished *United States ex rel. Huntt v. Russell,* 285 F.Supp. 765 (E.D.Pa.1968) *aff'd* 406 F.2d 774 (3d Cir.1969) on the ground that *Huntt* did not involve a claimed violation of the IAD. Reasoning that violations of rights guaranteed by the congressionally sanctioned compact also gave rise to transgressions of federal laws within the meaning of § 2254,[7] the *Esola* court then proceeded to rule that New Jersey's apparently erroneous failure to dismiss the indictment provided grounds for issuance of the writ.[8]

The court of appeals next confronted an IAD violation in the context of a habeas petition in *United States v. Williams,* 615 F.2d 585 (3d Cir.1980). The prisoner in *Williams* sought collateral review of his federal conviction on grounds that the conviction was obtained in violation of Article IV(e) of the IAD and that he had been denied the effective assistance of counsel because of his attorney's failure to assert the IAD defense at trial.[9] The petitioner claimed that Article IV(e) had been violated because, after attachment of a federal detainer, he was transferred at various times from state prison to the custody of federal authorities pursuant to writs of habeas corpus ad prosequendum, and then returned to state prison before prosecution on the federal charges. The district court denied the petition without a hearing. The court of appeals reversed and remanded the case for consideration of the petitioner's claim

---

5. For purposes of determining the impact of an IAD violation on a subsequent conviction, there is no difference between sections 2254 and 2255. *United States v. Williams,* 615 F.2d 585, 589 (3d Cir.1980); *Bush v. Muncy,* 659 F.2d 402, 407 n. 3 (4th Cir.1981), *cert. denied,* 455 U.S. 910, 102 S.Ct. 1259, 71 L.Ed.2d 449 (1982).

6. *See supra,* n. 4.

7. *Esola*'s holding that interpretation of the IAD presents questions of federal law was confirmed by the Supreme Court's decision in *Cuyler v. Adams,* 449 U.S. 433, 101 S.Ct. 703, 66 L.Ed.2d 641 (1981).

8. Relying on *Esola,* the court of appeals subsequently ruled that a violation of Article IV(e) of

the IAD required dismissal of a federal indictment. *United States v. Sorrell,* 562 F.2d 227 (3d Cir.1977), *cert. denied,* 436 U.S. 949, 98 S.Ct. 2858, 56 L.Ed.2d 793 (1978). *But see United States v. Mauro,* 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978) (holding federal writ of habeas corpus ad prosequendum not a "detainer" which triggers application of the IAD, but that writ constitutes a "written request for temporary custody" when federal government lodges a detainer against state prisoner). *See also United States v. Marzgliano,* 588 F.2d 395, 397 & nn. 3, 4 (3d Cir.1978).

9. The court of appeals noted that its review was limited to the question whether the district court erred by denying the petition without an evidentiary hearing. *Williams,* 615 F.2d at 588.

that his attorney's failure to raise the IAD defense denied him the effective assistance of counsel.[10] Relying on *Esola*, the court ruled that violations of Article IV(e) are violations of laws of the United States remediable under § 2255.

Of particular importance for present purposes, the *Williams* court addressed the question whether an Article IV(e) violation constitutes a "fundamental defect" warranting habeas relief under the standard announced in *Davis v. United States*, 417 U.S. 333, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974). While recognizing that other courts of appeals had reached a contrary determination,[11] the court adhered to *Esola*'s holding that transgressions of Article IV(e) provide a basis for granting the writ. The court reasoned that, under the very terms of the IAD, the sanction for failure to prosecute a prisoner before returning him to the asylum state is automatic dismissal of the criminal charges in the receiving jurisdiction. Thus, because federal law establishes Article IV(e) violations as an absolute defense to criminal charges, the court concluded that the existence of a meritorious claim under IV(e) was an "exceptional circumstance" entitling the petitioner to habeas relief.

> [T]he failure of the federal court to try the prisoner before returning him to state custody would be a violation of the Act meriting the dismissal of the charges against him.... [T]he defense to the indictment is absolute under the Act when the Government violates Article IV. Under such circumstances, we fail to see how an alleged IADA violation would not be the type of "fundamental defect" cognizable in section 2255 proceedings. Although an IADA violation may have little if no [sic] bearing on the prisoner's guilt or innocence, nonetheless Congress chose to make the defense absolute when the Government violates the Act and we hold that it is precisely the "exceptional circumstances" making section 2255 relief appropriate.

*United States v. Williams*, 615 F.2d at 590 (footnote omitted).

Finally, in *Nash v. Carchman*, 558 F.Supp. 641 (D.N.J.1983) *aff'd sub nom.*, *Nash v. Jeffes*, 739 F.2d 878 (3d Cir.1984), the court of appeals affirmed a writ of habeas corpus granted on behalf of a New Jersey prisoner whose conviction was obtained in violation of Article III of the IAD.[12] Article III, as the court noted, "requires that, when a jurisdiction that has ratified the IAD receives a request from a defendant incarcerated in another jurisdiction to adjudicate any 'untried indictment, information, or complaint' on the basis of which a detainer has been filed, the adjudication must take place within 180 days, or the charge must be dismissed." *Nash v. Jeffes*, 739 F.2d at 879. *See also* Interstate Agreement on Detainers, Article V(c).[13]

---

**10.** The court of appeals did not remand for an evidentiary hearing on the merits of the petitioner's IAD defense because it held that the Supreme Court's decision in *United States v. Mauro*, 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978) (holding transfers pursuant to writs of habeas corpus ad prosequendum to be within Article IV of the IAD) should not be given retroactive effect. *Williams*, 615 F.2d at 593.

**11.** *See generally, Bush v. Muncy, supra* note 5 and cases cited therein. *See also* Annot. 58 A.L.R.Fed. 443 (1982).

**12.** In relevant portion, Article III(a) provides:
Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within 180 days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint: Provided, That for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.
42 Pa.C.S.A. § 9101; N.J.Stat.Ann. § 2A:159A–3.

**13.** Article V(c) states:
If the appropriate authority shall refuse or fail to accept temporary custody of said person, or in the event that an action on the indictment, information or complaint on the basis of which the detainer has been lodged is not brought to

In *Nash* the prisoner sought resolution of a detainer lodged by New Jersey officials on account of an alleged parole violation. The charge was not resolved within 180 days, but the prisoner was later found to have violated his parole, and sentenced to further incarceration.

The prisoner challenged the additional term of confinement under § 2254. The district court granted the petition, relying on *Johnson v. Williams*, 666 F.2d 842 (3d Cir.1981) [14] and *United States v. Williams*, 615 F.2d 585 (3d Cir.1980) for the principle that "an alleged violation of the Interstate Agreement on Detainers is an issue cognizable in federal habeas corpus proceedings." *Nash v. Carchman*, 558 F.Supp. at 643. The court of appeals affirmed the district court's order, agreeing with the district court's conclusions that the IAD applies to detainers based on parole violations and that New Jersey forfeited its power to insist on strict compliance with procedures for requesting final disposition of the detainer.

### B.

The foregoing analysis of *Esola, Williams*, and *Nash* makes apparent that, while providing guidance for the present inquiry, the court of appeals has not squarely resolved the question whether deprivation of a pre-transfer extradition hearing entitles a prisoner to attack the imprisonment subsequently imposed by the receiving state. The court of appeals' application of the *Davis* criteria for habeas relief, however, when considered in light of the nature of the IAD violation asserted

here, persuades me that such a deprivation does not constitute a basis for relief under § 2254.

At the threshold, I have serious reservations as to whether *any* violation of the laws or Constitution of the United States, the only result of which is that a defendant is brought to trial, may be a basis for habeas corpus relief unless the violated federal precept itself mandates dismissal of charges as the sanction for its breach. The Supreme Court's decision in *Frisbie v. Collins*, 342 U.S. 519, 72 S.Ct. 509, 96 L.Ed. 541 (1952) is instructive in this regard. In *Frisbie*, the Court rejected a petition for habeas corpus filed by a prisoner whose presence at trial was allegedly secured in violation of the Federal Kidnapping Act. Applied to the current relator's petition— whether the petition is cast as a challenge to receiving state's personal jurisdiction or as a claim that his imprisonment is in violation of a federal statute—*Frisbie v. Collins* appears to foreclose § 2254 relief.[15] In accord with this reasoning is *United States ex rel. Huntt v. Russell*, 285 F.Supp. 765 (E.D.Pa.1968), *aff'd*, 406 F.2d 774 (3d Cir.1969), in which the court of appeals rejected the habeas petition of a prisoner convicted after an allegedly improper extradition.

The court of appeals, of course, distinguished *Frisbie* and *Huntt* in *United States ex rel. Esola v. Groomes*, 520 F.2d 830, 833 (3d Cir.1975) on the ground that "there was no assertion in that case [*Huntt*] that the rendition was violative of the Interstate Agreement on Detainers." Thus, the question remains whether the relator's transfer in alleged violation of the

---

trial within the period provided in Article III or Article IV hereof, the appropriate court of the jurisdiction where the indictment, information or complaint has been pending shall enter an order, dismissing the same with prejudice, and any detainer based thereon shall cease to be of any force or effect.
42 Pa.C.S.A. § 9101; N.J.Stat.Ann. § 2A:159A–5.

**14.** In *Johnson v. Williams*, 666 F.2d 842 (3d Cir.1981), the court rejected the § 2254 petition of a prisoner who claimed that his conviction was obtained in violation of the IAD. The court ruled that the petitioner's IAD rights had not been violated. In a footnote, the court stated:

"Because the IAD has been held to constitute a law of the United States, ... the federal courts have habeas corpus jurisdiction, pursuant to 28 U.S.C. § 2254, over the IAD violation asserted here." *Johnson v. Williams*, 666 F.2d at 844 n. 1 (citations omitted).

**15.** In the analogous context of illegal arrest, the Supreme Court has consistently ruled that "illegal arrest or detention does not void a subsequent conviction." *Gerstein v. Pugh*, 420 U.S. 103, 119, 95 S.Ct. 854, 865, 43 L.Ed.2d 54 (1975); *United States v. Crews*, 445 U.S. 463, 474 (1980) (Opinion of Brennan, J.).

extradition hearing right incorporated in IAD would render his imprisonment in violation of a federal statute, and entitle him to relief under § 2254. My reading of the court of appeals' decisions in *Esola, Williams,* and *Nash* convinces me that it does not.[16] As the court of appeals explained most clearly in *United States v. Williams,* issuance of the writ of habeas corpus must be justified by the presence of "extraordinary circumstances" such as the presence of an absolute defense to the charges. Indeed, it was on that basis that the *Williams* court ruled that violation of Article IV(e) of the IAD warrants habeas relief.[17] Violation of the relator's right to a pretransfer hearing, however, does not constitute a defense to criminal charges under the IAD, nor does it establish a defense according to principles of state law incorporated in the agreement. *See* Uniform Criminal Extradition Act § 10. *See also Commonwealth v. Gonce,* 466 A.2d 1039, 1043–1044 (Pa.Super.Ct.1983); *State v. Taylor,* 422 So.2d 109 (La.1982), *cert. denied,* 460 U.S. 1103, 103 S.Ct. 1803, 76 L.Ed.2d 367 (1983) (rejecting appeal of conviction where appeal based on violation of rights under *Cuyler v. Adams* ); *Watson v. Dupnik,* 128 Ariz. 458, 626 P.2d 622 ·(Ct.App.1981) (transfer could not be attacked after prisoner removed to receiving state). Imposition of the sanction of dismissal of criminal charges, therefore, would exact a heavier penalty for deprivation of an extradition hearing than was intended or anticipated by the federal or state legislatures.

Moreover, the asylum state's failure to provide a pre-transfer hearing deprives the prisoner so transferred of the right to a hearing which is, by Constitutional man-

date, narrowly circumscribed. As the Supreme Court stated in *Michigan v. Doran,* 439 U.S. 282, 288, 99 S.Ct. 530, 534, 58 L.Ed.2d 521 (1978), the Extradition Clause of the Constitution "never contemplated that the asylum state was to conduct the kind of preliminary inquiry traditionally intervening between the initial arrest and trial." Indeed, as the Court further explained, once the governor of the asylum state has granted extradition, a court entertaining a challenge to extradition on a petition for habeas corpus "can do no more than decide (a) whether the extradition documents on their face are in order; (b) whether the petitioner has been charged with a crime in the demanding state; (c) whether the petitioner is the person named in the request for extradition; and (d) whether the petitioner is a fugitive." 439 U.S. at 289, 99 S.Ct. at 535.

By contrast, the receiving state's conviction of the extradited prisoner, rendered only after the receiving jurisdiction's decision to hold the prisoner for trial, and subsequent prosecution presumptively in accord with the mandate of due process, is ample assurance that the individual transferred from the asylum state is the person named in the receiving state's indictment. Thus, while prisoners deprived of a pretransfer hearing lose the opportunity to challenge the demanding state's request for custody, the receiving jurisdiction remains obligated to establish the prisoner's identity and culpability by standards far more demanding than could be imposed in an extradition hearing. Deprivation of the limited pre-transfer hearing permitted by the Constitution, therefore, when considered in the context of a habeas corpus petition filed by a prisoner convicted in the

**16.** This result is not in conflict with the Eighth Circuit Court of Appeals' decision in *Cavallaro v. Wyrick,* 701 F.2d 1273 (8th Cir.), *cert. denied,* — U.S. —, 103 S.Ct. 3120 (1983). In *Cavallaro,* a divided court ruled that a state prisoner still in custody of the asylum jurisdiction was entitled to relief under 28 U.S.C. § 2241 because of the asylum state's failure to conduct a pretransfer hearing. The court stated that the case "should be remanded to the state of Missouri for the purpose of providing Cavallaro with a pre-

transfer hearing....," and remanded the matter to the district court for entry of an appropriate order. 701 F.2d at 1275. The court was not faced with, nor did it decide the question whether deprivation of such a hearing would provide grounds for voiding a conviction later obtained by the receiving state.

**17.** The Third Circuit's rulings in *Esola* and *Nash* are consistent with this approach.

receiving jurisdiction, cannot be considered a "fundamental defect which inherently results in a complete miscarriage of justice...." *Davis v. United States, supra.*

Finally, it is not necessary to set aside the convictions of prisoners extradited without a pre-transfer hearing in order to deter unlawful extradition or to vindicate the rights of innocent prisoners wrongfully removed. Those prisoners who are actually prejudiced by deprivation of a pre-transfer hearing may establish their innocence at or before the receiving state's criminal trial, and they may seek redress for improper extradition in a federal civil rights action. *Cuyler v. Adams,* 449 U.S. 433, 101 S.Ct. 703, 66 L.Ed.2d 641 (1981). I conclude, therefore, that deprivation of a pre-transfer extradition hearing is not an "exceptional circumstance" justifying issuance of the writ of habeas corpus.

## V.

 Shack's final argument is that because he was transferred to Pennsylvania without a pre-transfer hearing, he should have been returned to New Jersey for the inquiry mandated by *Cuyler v. Adams,* 449 U.S. 433, 101 S.Ct. 703, 66 L.Ed.2d 641 (1981), but that his return to New Jersey would have discharged Pennsylvania's criminal prosecution. The flaw in relator's reasoning is that neither the IAD nor the Uniform Criminal Extradition Act requires a receiving state to remand a prisoner to the custody of the asylum state once his transfer has been effected. In addition, as discussed above, the protections afforded in the receiving state's own criminal proceedings provide assurance that only those defendants named in an indictment will be convicted, and the damages caused by noncompliance with the hearing requirement can be remedied in a civil rights action. There is no need, therefore, to require the additional shuttling of prisoners between jurisdictions—an evil which the IAD was designed to eliminate. *United States v. Williams,* 615 F.2d 585, 588 (3d Cir.1980).

## VI.

For the reasons set forth in this opinion, I conclude that relator's claim that he was deprived of his right to a pre-transfer extradition hearing does not entitle him to relief under § 2254. Because the court of appeals has yet to address this issue squarely, I will deny the writ, but will certify probable cause for appeal.

### ORDER

This 2nd day of October, 1984, it is

ORDERED that the Motion of relator Murray Shack for Summary Judgment is DENIED. It is

FURTHER ORDERED that the Petition of Murray Shack for a Writ of Habeas Corpus is DENIED.

I certify that there is probable cause for appeal.